**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| ADVANCE TRUST & LIFE ESCROW SERVICES, LTA, as securities intermediary for LIFE PARTNERS POSITION HOLDER TRUST, on behalf of itself and all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE,<br><br>            Defendant. | Civil Action No. 4:18-CV-00368-SMR-HCA |

## STIPULATION AND SUPPLEMENTAL PROTECTIVE ORDER REGARDING THIRD-PARTY MILLIMAN, INC.'S MG-ALFA SOFTWARE

HELEN C. ADAMS, Chief Magistrate Judge:

WHEREAS, on February 21, 2020, Plaintiff Advance Trust & Life Escrow Services, LTA, as securities intermediary for Life Partners Position Holder Trust ("Plaintiff"), served a subpoena on non-party Milliman, Inc. ("Milliman") requesting documents, including actuarial software and models;

WHEREAS, to facilitate the secure production and use of Milliman's MG-ALFA actuarial software, Plaintiff and Milliman hereby stipulate to this Stipulation and Supplemental Protective Order Regarding Third-Party Milliman, Inc.'s MG-ALFA Software ("MG-ALFA Stipulated Protective Order"), which supplements the Stipulated Confidentiality Agreement and Protective Order (Dkt. 38) as follows:

It is hereby ORDERED:

1.     <u>Definitions</u>

a. "Plaintiff" means Advance Trust & Life Escrow Services, LTA, as securities intermediary for Life Partners Position Holder Trust;

b. "Software" means machine-executable code, printed listings of code, source code, documentation and related information, as well as any algorithms, formulas, methods, concepts, program logic, program architecture and/or coding techniques, embodied in the code, listings, documentation and/or information.

c. "Proprietary Software" means any and all computer programs, including, but not limited to, MG-ALFA, which are (a) marked or otherwise identified to the Plaintiff as being proprietary to Milliman; and (b) are at any time delivered to the Plaintiff on behalf, and with the authorization of Milliman; together with all Software comprising, associated with or relating to such programs.

d. "Use" or "Used" means, with respect to machine-executable Software, (a) entering and/or storing any portion of the Proprietary Software into or in a machine; and/or (b) transmitting any portion of the Proprietary Software to a machine for processing; and/or (c) compiling, executing, translating or interpreting any code or machine instructions contained in the Proprietary Software in connection with executing such code or instructions; and/or (d) displaying any of the Proprietary Software in connection with the processing of such code or machine instructions.

e. "Authorized User" means a person executing the Proprietary Software on behalf of the Plaintiff.

f. "User Manual(s)" means those user manuals and documentation, in paper or electronic form, which accompany the Proprietary Software delivered to Plaintiff by Milliman.

  g. "Program Patches" mean minor corrections to the Proprietary Software to correct deviations in the Proprietary Software in order for the Proprietary Software to substantially conform to the User Manual(s) at the time of installation. Such Program Patches shall become part of the Proprietary Software.

  h. "Program Updates" mean new versions of, or additions to, the Proprietary Software by Milliman which improve its operating performance but do not add to or alter its basic function(s). Such Program Updates shall become part of the Proprietary Software.

  i. "Program Modifications" mean new versions of, or additions to, the Proprietary Software which, in Milliman's opinion, add to or improve the function(s) of the Proprietary Software, and new Software modules or products adapted to interact with the Proprietary Software to add to or improve the function(s) of the Proprietary Software. Milliman shall, at its sole discretion, determine what changes or additions to the Proprietary Software will be deemed Program Modifications, possibly requiring payment of additional fees.

 2. Milliman will provide its Proprietary Software, MG-ALFA, Versions 10.2.2011, 11.0.2069, 8.3.2196, and 9.3.2291, to Plaintiff to allow Authorized Users to Use the Proprietary Software to examine particular actuarial files provided to Plaintiff in discovery in connection with this litigation. Subject to the terms and conditions of this MG-ALFA Stipulated Protective Order, Milliman grants to Authorized Users a nontransferable and nonexclusive limited license, without a right to sublicense, that provides access to Use the Proprietary Software during the term of this litigation to examine particular actuarial files or models provided to Plaintiff in discovery in connection with this litigation, including to modify inputs and assumptions and create the corresponding output. Title to the Proprietary Software shall at all times remain with Milliman and its licensors. In addition to the obligations of confidentiality as provided in this MG-ALFA

Stipulated Protective Order and the Stipulated Confidentiality Agreement and Protective Order (Dkt. 38), Authorized Users shall not make any copies of the Proprietary Software or User Manuals in any form, except that Authorized Users may send the User Manuals or portions thereof to Plaintiff as necessary to discuss methodology. Neither Plaintiff nor the Authorized Users shall Use the Proprietary Software, nor shall they permit the Proprietary Software to be Used by anyone other than Authorized Users, for any purposes other than this litigation. Plaintiff and Authorized Users specifically agree not to Use the Proprietary Software for the purpose of developing other software for license or sale to others. Authorized Users shall not (i) modify or create any derivative work from the Proprietary Software, (ii) include the Proprietary Software in any other software, (iii) use the Proprietary Software to provide processing services to third parties or on a service bureau basis, or (iv) reverse assemble, decompile, reverse engineer or otherwise attempt to derive source code (of the underlying ideas, algorithms, structure, or organization) from the Proprietary Software.

      3.      Milliman's Propriety Software shall be deemed "Confidential" in accordance with Paragraph 2 of the Stipulated Confidentiality Agreement and Protective Order.

      4.      Plaintiff shall request approval for each Authorized User from Milliman. Plaintiff's request shall include each proposed Authorized User's current employment. In the event a proposed Authorized User is not employed by a firm that develops or sells competing software to MG-ALFA, Milliman's approval for such Authorized Users shall not be unreasonably withheld. In the event a proposed Authorized User is employed by a firm that develops or sells competing software to MG-ALFA, the parties agree to meet and confer in good faith about whether the proposed Authorized User is a competitor of Milliman and whether additional protections to Milliman are appropriate as to that Authorized User, including whether such proposed Authorized User should not become an Authorized User. Milliman shall have the final right of approval of

any Authorized User, which approval shall not be unreasonably withheld. If the parties are not able to resolve any dispute with respect to such Authorized User, the parties will submit a joint letter to the Court to resolve the dispute with respect to such protections. Absent the mutual agreement of Milliman and the Plaintiff, or leave of Court, Plaintiff collectively will have no more than 15 Authorized Users at any given time. If Plaintiff wishes to change the Authorized Users, Plaintiff shall, pursuant to the procedures and requirements of this paragraph, request approval for such replacement of Authorized Users from Milliman.

5. Plaintiff, on behalf of themselves and the Authorized Users, acknowledges and agrees that the Proprietary Software is proprietary to and a trade secret of Milliman or its licensors and that this MG-ALFA Stipulated Protective Order grants the Plaintiff and the Authorized Users no title or right of ownership in or to the Proprietary Software. Neither the Plaintiff nor the Authorized Users shall, at any time, take or cause any action which would be inconsistent with or tend to impair the rights of Milliman or its licensors in the Proprietary Software.

6. Authorized Users may Use the Proprietary Software solely at a Designated Site(s), which is limited to the offices of Plaintiff's counsel and Authorized Users' offices, which will be identified along with Plaintiff's request for approval for each proposed Authorized User.

7. Milliman may, upon advance notice of at least seven (7) days and no more than once per calendar year per Authorized User, perform a compliance review to determine compliance with the terms of this MG-ALFA Stipulated Protective Order (a "Compliance Review"). The Compliance Review shall: (1) be conducted at the Designated Site (the Authorized User and applicable Authorized User machines and equipment shall be physically present at the Designated Site for the Compliance Review); (2) be limited to confirming that the Proprietary Software is installed and stored solely as permitted pursuant to this MG-ALFA Stipulated Protective Order and subject to the non-disclosure obligations under Paragraph 25; and (3) not

unreasonably interfere with Authorized User's or Plaintiff's operations. Milliman will not charge for any time or expenses in connection with any such Compliance Review(s). Each party will bear its own expenses associated with its participation in any such Compliance Review(s), including any travel or lodging expenses incurred by its employees or other representatives.

8. Notwithstanding anything to the contrary in the Stipulated Confidentiality Agreement and Protective Order, Plaintiff and the Authorized Users shall not allow any persons to Use the Proprietary Software other than the Authorized Users, or other Persons listed in Paragraph 8 of the Stipulated Confidentiality Agreement and Protective Order, who are acting under the direction and supervision of the Authorized Users. Other Persons listed in Paragraph 8 of the Stipulated Confidentiality Agreement and Protective Order, may observe the Use of the Proprietary Software by Authorized Users and view the results of the Use of the Proprietary Software by Authorized Users.

9. Authorized Users and Plaintiff acknowledges that the Proprietary Software is unique and valuable and was developed or otherwise acquired by Milliman at great expense, and that any unauthorized disclosure or use of the Proprietary Software would cause Milliman irreparable injury or loss for which monetary damages alone would be an inadequate remedy. All Authorized Users shall sign an undertaking, in the form annexed as an Exhibit hereto, acknowledging receipt of the Stipulated Confidentiality Agreement and Protective Order and this MG-ALFA Stipulated Protective Order, and shall agree to abide by their terms. Plaintiff agrees that the Authorized Users' Use of the Proprietary Software and User Manuals shall be solely as relating to the subject matter of this litigation and shall be subject to and in strict accordance with the terms of this MG-ALFA Stipulated Protective Order. It is expressly understood and agreed that Authorized Users' obligations to keep the Proprietary Software confidential under the terms of this

MG-ALFA Stipulated Protective Order hereof shall continue after the termination, for any reason, of the Authorized Users' license to Use the Proprietary Software.

10. Plaintiff and the Authorized Users shall not decompile, translate, reverse engineer or generate source code with respect to the Proprietary Software, nor shall the Plaintiff or Authorized Users knowingly assist or encourage any third party to commit such acts. In the event that the Plaintiff or the Authorized Users become aware of any third party committing such acts, the Plaintiff and the Authorized Users shall promptly notify Milliman of the pertinent facts concerning such acts. In the event the Plaintiff or the Authorized Users decompile, translate, reverse engineer or generate source code with respect to the Proprietary Software, or the Plaintiff or the Authorized Users knowingly assist or encourage any third parties to commit such acts, Milliman retains its rights and remedies to claw back the Proprietary Software, require its deletion from the offending Plaintiff's/Authorized User's hardware devices, and to obtain legal or equitable relief, including damages and/or injunctive relief.

11. Milliman shall make all reasonable efforts to provide the Authorized Users, in a timely manner, with any Program Patches that Milliman is aware are necessary to substantially conform the Proprietary Software to the User Manual(s) at the time of installation. Milliman shall provide to the Authorized Users, subject to the terms and conditions of this MG-ALFA Stipulated Protective Order, any Program Updates released to other licensees and deemed by Milliman to be relevant to the Proprietary Software.

12. Milliman shall provide to Authorized Users, via telephone or e-mail and during regular business hours, consultation regarding proper Use of the Proprietary Software in conformance with the User Manual(s) at the support rates listed in Paragraph 15.

13. Milliman is not obligated to (i) interpret program results, perform actuarial modeling work, or provide expert actuarial assistance to the Plaintiff; (ii) assist with questions

related to computer operating systems, computer hardware, and peripherals which are not related to the use of the Proprietary Software; (iii) perform data debugging and/or correcting; (iv) perform services necessitated as a result of any cause other than authorized and proper use by the Authorized Users of the Proprietary Software, including, but not limited to neglect, abuse, unauthorized modification, unauthorized maintenance, electrical fire, water or other damage; or (v) provide Program Modifications and consultations regarding Program Modifications.

14. Milliman will provide Authorized Users with two (2) days of in-person training in the Use of the Proprietary Software. Such training, if feasible, will include a sample of ten (10) actuarial inputs from North American Company for Life and Health Insurance ("Defendant"), subject to Paragraph 13 of this MG-ALFA Stipulated Protective Order. Such training will be provided at a location mutually agreed to by the Plaintiff and Milliman. Such training will be scheduled following the entry of this MG-ALFA Stipulated Protective Order and will be subject to the availability of Milliman personnel. Milliman's reasonable travel expenses for the training session will be reimbursed by the Plaintiff. Milliman will be reimbursed for its fees in accordance with Paragraph 15 of this MG-ALFA Stipulated Protective Order and for its reasonable travel expenses incurred in providing any additional training and support to Authorized Users.

15. The Plaintiff will reimburse Milliman for its fees reasonably incurred in providing training and support services to Authorized Users, as well as other services that relate directly to the functionality of the Proprietary Software and are performed at the Plaintiff's request. Plaintiff agrees to pay Milliman's current standard rates for MG-ALFA support and training that are in effect at the time such services are provided, which Milliman represents will not in this litigation exceed the hourly rate of $500 per person in 2020. After 2020, Milliman's rates may change, not to exceed a 5% increase per year, and will be applied prospectively from the date of the rate change.

16. On a monthly basis, Milliman will provide Plaintiff with a statement for all charges due. Statements shall be sent to Plaintiff's counsel of record. Payment shall be due within thirty (30) days of receipt of an invoice. Plaintiff shall pay Milliman interest on amounts not paid and more than sixty (60) days past due at the rate of 1.5% per month or such lower rate as may be the maximum rate permitted by law. If Plaintiff fails to pay, when due, any statement under this MG-ALFA Stipulated Protective Order, Milliman shall have the right to withhold services if such failure to pay is not remedied within fifteen (15) days of receipt of written notice of such failure by Plaintiff.

17. Prior to disposing of any media or hardware, Authorized Users and Plaintiff shall ensure that any Proprietary Software contained by such media or stored in such hardware has been completely erased or destroyed.

18. Plaintiff may terminate the license for the Authorized Users to Use the Proprietary Software at any time by giving written notice to Milliman.

19. Milliman may terminate Authorized Users' license to Use the Proprietary Software if any Authorized User fails to comply with any term or condition of this MG-ALFA Stipulated Protective Order. Milliman's termination of an Authorized User's license to Use the Proprietary Software and/or repossession of the Proprietary Software shall be without prejudice to any other lawful remedies that Milliman may have.

20. Authorized Users' license to Use the Proprietary Software shall automatically terminate upon the final resolution of this litigation.

21. Plaintiff shall erase the Proprietary Software from all of the Authorized Users' hardware devices used to operate the same no later than sixty (60) days after the final termination of this litigation by settlement or exhaustion of all appeals.

22. After the final termination of this litigation, within sixty (60) days of receiving a request to do so by Milliman, Authorized Users shall provide Milliman with a sworn statement attesting to their compliance with the terms of this MG-ALFA Stipulated Protective Order, including a specific statement of compliance with Paragraphs 2, 5, 8, 9, 10, 17, and 21 and that Authorized Users' obligations to keep the Proprietary Software confidential under the terms of this MG-ALFA Stipulated Protective Order hereof shall continue after the termination, for any reason, of the Authorized Users' license to Use the Proprietary Software..

23. The Court shall retain jurisdiction of any disputes concerning Milliman's compliance with the subpoena served on Milliman by Plaintiff on February 21, 2020 and this MG-ALFA Stipulated Protective Order, provided that with respect to any disputes arising out of any alleged breach of Paragraphs 2, 5, 6, 8, 9, 10, 17, 19, 21 and 22 of this MG-ALFA Stipulated Protective Order by an Authorized User, Milliman retains its right, without prejudice to the rights of other Authorized User(s) to Use the Proprietary Software in this litigation in conformance with the terms and conditions of this MG-ALFA Stipulated Protective Order, to bring an action or claims in any available forum, for any and all available legal or equitable relief against the allegedly breaching Authorized User.

24. Nothing in this MG-ALFA Stipulated Protective Order shall constitute an admission as to the propriety of Plaintiff's request for the Proprietary Software or a waiver of Milliman's or Defendant's right to object to any other discovery on any grounds.

25. In the course of performing its obligations under this MG-ALFA Stipulated Protective Order—for example when Milliman is performing its obligations under Paragraphs 7, 11, 12, and 14 of this MG-ALFA Stipulated Protective Order—Milliman may obtain information about the Use of the Proprietary Software by Authorized Users.  Milliman agrees not to disclose

such information to anyone other than the Plaintiff and, specifically, agrees not to share such information with the Defendants.

26.     The parties agree to meet and confer in good faith to resolve, subject to Paragraphs 13 and 15, any technical difficulties that may arise in making Use of the Proprietary Software to access, view, and use relevant financial modeling files and associated input data as they were maintained by Defendant in the ordinary course of business, including difficulties in making Use of the Proprietary Software to reproduce Defendant's modeling results.

SO STIPULATED AND AGREED:

Dated: April 23, 2020

SUSMAN GODFREY LLP

By: /s/ Hannah C. Waite
Hannah Waite (pro hac vice)
Seth Ard (pro hac vice)
Ryan Kirkpatrick (pro hac vice)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel.: 212-336-8330
Fax: 212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com
hwaite@susmangodfrey.com

Steven G. Sklaver (pro hac vice)
Lora Krushich (pro hac vice)
Glenn Bridgeman (pro hac vice)
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: 310-789-3100
Fax: 310-789-3150
ssklaver@susmangodfrey.com
lkruslich@susmangodfrey.com

R. Ronald Pogge (AT0006374)
Robin G. Maxon (AT0005005)
HOPKINS & HUEBNER, P.C.
2700 Grand Avenue, Suite 111
Des Moines, IA 50312
Tel:    515-244-0111
Fax:    515-697-4299
rpogge@hhlawpc.com
rmaxon@hhlawpc.com

*Attorneys for Plaintiff*

Dated: April 22, 2020

WILLIAMS, KASTNER & GIBBS PLLC

By: /s/ Christine Lee
Rodney L. Umberger, Jr., WSBA #24948
Christine J Lee, WSBA #44379
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Telephone: (206) 628-6600
Fax: (206) 628-6611
rumberger@williamskastner.com
clee@williamskastner.com

*Attorneys for Non-Party Milliman, Inc.*

**IT IS SO ORDERED.**

Dated: April 27, 2020

/s/ Helen C. Adams
Helen C. Adams
Chief U.S. Magistrate Judge