# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PHT HOLDING II LLC, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE,<br><br>Defendant. | Civil Action No. 18-CV-00368<br><br>Honorable Stephanie M. Rose<br>Honorable Helen C. Adams |

## JOINT STIPULATION AND SETTLEMENT AGREEMENT

IT IS HEREBY STIPULATED AND AGREED, subject to approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil Procedure, by, between and among Plaintiff, individually and on behalf of the Class, and Defendant, that the causes of action raised by this lawsuit, or which could have been raised by this lawsuit, as captioned above, are hereby settled and compromised on the terms and conditions set forth in this Joint Stipulation and Settlement Agreement and the releases set forth herein.

This Agreement is made and entered into by and among Plaintiff and Defendant and is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Action and Released Claims with prejudice upon and subject to the terms and conditions hereof.

## 1.   Definitions

Capitalized terms in the Agreement shall have the meaning set forth below:

1.1    "Action" means the lawsuit, captioned *PHT Holding II LLC, on behalf of itself and all others similarly situated, v. North American Company for Life and Health Insurance,* Case No. 18-CV-00368 (SMR), pending in the United States District Court for the Southern District of Iowa as embodied in the pleadings, court filings, and proceedings before the Court.

1.2    "Accounting" means an accounting of all payments or credits to be made under this Agreement.

1.3    "Accumulation Value Credits" means credits to be made to the accumulation values of the Class Policies that are in-force (have not been terminated for any reason under the terms of the Class Policies) at the times specified for such credits to be applied following the Final Settlement Date, as specified in Section 2.2(c) and (e) below.

1.4    "Agreement" means this Joint Stipulation and Settlement Agreement.

1.5    "Classic Term UL" means all life insurance policies that were issued by North American which are associated in North American's policy administration system with one of the plan codes listed in Exhibit A hereto. Each such policy is referred to as either Classic Term UL I or Classic Term UL II. North American represents that the plan codes listed in Exhibit A are associated only with Classic Term UL I or Classic Term UL II policies.

1.6    "Claims" means any and all claims in equity or law, however denominated or presented, including Unknown Claims, whether direct or indirect, known or unknown, foreseen or unforeseen, accrued or not yet accrued, seeking any form of relief or compensation for any injury, damage, obligation, penalty or loss whatsoever.

1.7    "Class" means the class certified by the Class Certification Order, except that the Class shall not include Class Members who timely and validly opted-out during the Original Opt-Out Period, which expired on January 3, 2023. The Class Certification Order identified the class as follows:

> [A]ll current and former owners of Classic Term UL I or II issued or insured by North American Company for Life & Health Insurance, or its predecessors, during the Class Period. This Class shall not include Defendant North American, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing; anyone employed with Plaintiff's counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family.

1.8    "Class Certification Order" means the Court's March 22, 2022 Order (Dkt. 148).

1.9    "Class Counsel" means Susman Godfrey L.L.P., the attorneys appointed by the Court to serve as class counsel in the Class Certification Order.

1.10    "Class Counsel's Fees and Expenses" means the amount of the award approved by the Court to be paid to Class Counsel from the Settlement Escrow Account in respect of attorneys' fees and expenses, including any fees or expenses of other counsel for Plaintiff and any fees or expenses of any consultants or experts engaged by Plaintiff or any counsel for Plaintiff.

1.11    "Class Member" means a person or entity that is a member of the Class.

1.12    "Class Settlement Notice" means the notice of the Settlement approved by the Court to be sent by the Settlement Administrator, as described in Section 4, to the persons and entities on the Notice List.  Class Counsel will submit the short-form and long-form Class Settlement Notices substantially in the form attached to this Agreement as Exhibit B for the Court's approval.

1.13    "Class Period" means, as to each policy, the applicable statute of limitations period as set forth in Plaintiff's Notice of Motion and Motion for Class Certification, Dkt. 92 at 2, as modified by Dkt. 297-1 at 24.  The applicable statute of limitations period for this purpose for each Class Policy shall be deemed to be the period specified in Exhibit C hereto for the state which is identified in North American's policy administration system as the "issue state."

1.14    "Class Policy" or "Class Policies" means any of the policies defined in Section 1.5 as Classic Term UL that were in force for any amount of time during the Class Period, excluding (i) the Policies that were validly excluded from the Class during the Original Opt-Out Period and (ii) the Policies owned by defendant North American, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing; anyone employed with Plaintiff's counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family.

1.15    "Class Representative" means Plaintiff PHT Holding II LLC, individually and as representative of the Class, and any of its assigns, successors-in-interest, representatives, employees, managers, partners, beneficiaries, and members.

1.16    "Class Settlement Notice" means the notice in the forms approved by the Court to be used to notify Class Members of the settlement of the Action and the other matters set forth in such forms.

1.17    "Class Website" means the website set up by the Settlement Administrator concerning the Action pursuant to Section 4.6 below.

1.18    "COI" means cost of insurance as described in the Class Policies.

1.19    "Confidential Information" means material designated as "Confidential" in accordance with the terms of the Protective Order.

1.20    "Court" means the United States District Court for the Southern District of Iowa.

1.21    "Defendant" or "North American" means North American Company for Life and Health Insurance, and any of its predecessor and successor entities.

1.22    "Distribution Date" means the date on which checks for cash payments are to be mailed to Final Class Members with Terminated Policies as determined pursuant to Section 2.2(c).

1.23    "Excluded Claims" means (a) any Claims arising out of COI deductions made after the Final Approval Date, (b) any Claims that relate to any policies other than Class Policies owned by Class Members, (c) any claims to complete or enforce the Settlement, (d) any Claims to enforce a death benefit, and (e) any claims arising from any change to the COI rate scales that were in effect on June 17, 2023.

1.24    "Fairness Hearing" means any hearing held by the Court on any motion(s) for final approval of the Settlement for the purposes of:  (i) entering the Order and Judgment; (ii) determining whether the Settlement should be approved as fair, reasonable, adequate and in the best interests of the Final Class Members; (iii) ruling upon an application by Class Counsel for attorneys' fees and reimbursement of expenses and payment of a Service Award to the Class Representative, all from the Settlement Escrow Account; and (iv) ruling on any other matters raised or considered in connection with settlement of the above-captioned litigation.

1.25    "Fees and Expenses Order" means the Court's order to be entered with respect to Class Counsel's Fees and Expenses.

1.26    "Final Class Member Settlement Benefits" means the cash payments and Accumulation Value Credits to be provided to Final Class Members from the Settlement Amount in accordance with Sections 2.1 and 2.2.

1.27    "Final Approval Date" means the date on which the Court enters its Order and Judgment finally approving the Settlement and dismissing the Action with prejudice.

1.28    "Final Class Member(s)" means all persons and entities that are included in the Class, excluding any Class Members who validly opt out during the Second Opt-Out Period.

1.29    "Final Class Policy(ies)" means any and all Class Policies, excluding the Opt-Out Policies.

1.30    "Final Settlement Date" when referring to the Order and Judgment means the date when the Judgment is final,  meaning:  (i) if no appeal from or request for review of the Order and Judgment is filed, the day after the expiration of the time for filing or noticing any form of valid appeal from the Order and Judgment; or (ii) if an appeal or request for review is filed, the day after the date on which all appeals or requests for review have been dismissed, or the Order and Judgment is upheld by orders concluding all such appeals or reviews, and is not subject to further review on appeal or by certiorari or otherwise; provided, however, that no order of the Court or modification or reversal on appeal or any other order relating solely to the Class Counsel's Fees and Expenses or Service Award shall constitute grounds for cancellation or termination of this Agreement or affect its terms, or shall affect or delay the date on which the Order and Judgment becomes final.

1.31    "In-Force Policy" means a Final Class Policy that was not a Terminated Policy as of March 31, 2023.

4

1.32   "In-Force Policyowner" means a Final Class Member who is the owner of an In-Force Policy.

1.33   "Mediator" means Phillips ADR.

1.34   "Mills Supplemental Report" means the Supplemental Expert Report of Robert Mills using data through March 31, 2023, provided by Plaintiff to North American on May 18, 2023.

1.35   "Notice Date" means the date on which the Settlement Administrator first mails the Class Settlement Notice.

1.36   "Notice List" means the list of Class Members to be provided by Class Counsel to the Settlement Administrator. North American shall provide all data in North American's possession that is reasonably necessary for Plaintiff to effectuate mailing of the Class Settlement Notice; however North American shall not be responsible for the contents of the Class Settlement Notice nor any determination of the Final Class Member Settlement Benefits to be allocated to any Final Class Member.

1.37   "Opt-Out Policy(ies)" means any Policy that is validly excluded during the Second Opt-Out Period.

1.38   "Order and Judgment" means the Court's order approving the Settlement and entering final judgment, which as a condition of settlement shall be materially in the form attached hereto as Exhibit D.

1.39   "Original Opt-Out Period" means the 45-day period previously provided to Class Members to opt-out following the issuance of class notice on November 18, 2022, which period expired on January 3, 2023.

1.40   "Owner" or "Owners" means any and all former and current owners of Class Policies.

1.41   "Party" or "Parties" means, individually or collectively, Plaintiff, on behalf of itself and the Class, and Defendant.

1.42   "Plaintiff" means PHT Holding II LLC, individually and as representative of the Class, and any of its predecessor and successor entities.

1.43   "Policy" or "Policies" means all applications, schedules, riders, and other forms specifically made a part of a Class Policy at the time of issue, plus all riders, endorsements, and amendments issued thereafter.

1.44   "Policy Credit Date" means the first monthly deduction day for an In-Force Policy following the Distribution Date or Redistribution Date, as applicable, and it is the date as of which Defendant will apply an Accumulation Value Credit to that In-Force Policy.

1.45    "Post-Settlement Terminated Policies" means In-Force Policies that have lapsed, matured, or been surrendered prior to their respective Policy Credit Dates.

1.46    "Preliminary Approval Date" means the date on which the Court enters an order granting preliminary approval of the proposed Settlement and directing that notice of that Settlement be provided to the Class.

1.47    "Protective Order" means the Stipulated Protective Order entered in the Action on April 9, 2019 (Dkt. 38) and the Stipulated Supplemental Protective Order entered in the Action on April 27, 2020 (Dkt. 67), as applicable.

1.48    "Redistribution Date" means the date on which checks for a second distribution are mailed pursuant to Section 2.2(e).

1.49    "Released Claims" means all Claims that were asserted or could have been asserted in the Action related to the Policies from the beginning of time through the Final Approval Date. Released Claims do not include Excluded Claims. For the avoidance of doubt, this is a historical release only and the release does not release any Claims arising out of COI deductions made after the Final Approval Date.

1.50    "Releasees" means Defendant and the Defendant's past, present, and future parent companies, direct and indirect subsidiaries, affiliates, predecessors, joint ventures, successors and assigns, together with each of the foregoing Releasees' respective past, present, and future officers, directors, shareholders, employees, actuaries, consultants, representatives, and attorneys, including but not limited to, all of the above-referenced Releasees' heirs, administrators, executors, predecessors, successors and assigns, or any of them, and including any person or entity acting on behalf or at the direction of any of them.

1.51    "Releasing Parties" means Plaintiff and all Final Class Members, on their own behalf and on behalf of their respective agents, heirs, relatives, attorneys, consultants, successors, predecessors, payors, trustees, grantors, beneficiaries, principals, subrogees, executors, assignees, and all other persons or entities acting by, through, under, or in concert with any of them or purporting to claim on their behalf.  To the extent a Final Class Member is an Owner of both an Excluded Policy and a Final Class Policy, any release by that Final Class Member will only be applicable to Claims related to the Final Class Policy and not to Claims related to the Excluded Policy.

1.52    "Service Award" means the amount of an award approved by the Court to be paid from the Settlement Escrow Account to the Class Representative, in addition to any settlement relief it may be eligible to receive, to compensate the Class Representative for efforts undertaken by it on behalf of the Class.

1.53    "Settlement" means the settlement of the Action on the terms set forth in this Agreement.

1.54    "Settlement Administration Expenses" means all administrative fees and expenses incurred in administering the Settlement, including all expenses related to the Class Settlement

Notice and any other fees or expenses incurred by the Settlement Administrator.  Settlement Administration Expenses shall be paid from the Settlement Escrow Account.

1.55    "Settlement Administrator" means JND Legal Administration LLC, which the Court previously approved in its Order Approving Form and Manner of Notice (Dkt. 188 at 2) to administer Class Notice, as the Settlement Administrator.  The Settlement Administrator's fees shall be paid from the Settlement Escrow Account.

1.56    "Settlement Amount" means $59 million (and nothing more) in combined cash and Accumulation Value Credits.

1.57    "Settlement Escrow Account" means the escrow account established pursuant to section 2.1(c).

1.58    "Second Opt-Out Period" means the additional 45-day period in which Class Members are given an opportunity to opt out of the Class following the mailing of the Class Settlement Notice.

1.59    "Terminated Policy" means a Final Class Policy as to which North American cannot provide Accumulation Value Credits because it lapsed, matured, or was surrendered on or before March 31, 2023.

1.60    "Terminated Policyowner" means a Final Class Member who is the owner of a Terminated Policy, or their estate.

1.61    "Unknown Claims" means any claims asserted, that might have been asserted, or that hereafter may be asserted, concerning or arising out of the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were alleged or could have been alleged in the Action with respect to the Released Claims that one or more of the Releasing Parties do not know or suspect to exist in his, her, or its favor.

1.62    The terms "he or she" and "his or her" include "it" or "its," where applicable. Defined terms expressed in the singular also include the plural form of such term, and vice versa, where applicable.

1.63    All references herein to sections and paragraphs refer to sections and paragraphs of this Agreement, unless otherwise expressly stated in the reference.

2.    **Settlement Relief**

In consideration of the releases provided herein, North American agrees as follows:

2.1    Settlement Payments and Accumulation Value Credits

(a)    North American shall provide the Settlement Amount to fully and completely resolve all Released Claims by Final Class Members.  This Settlement Amount will cover all Accumulation Value Credits to In-force Policyowners, all cash payments to Final Class Members, all Settlement Administration Expenses, and any Service Award and any Class

7

Counsel's Fees and Expenses awarded by the Court.  For purposes of this Agreement, Accumulation Value Credits shall be deducted from the Settlement Amount on a dollar-for-dollar basis to determine the amount of cash to be provided by Defendant for the funding of the Settlement Escrow Account to pay the cash payments to Final Class Members, Settlement Administration Expenses, any Service Award, and any Class Counsel's Fees and Expenses.  In connection with this Settlement, North American shall have no obligation to pay or provide to Plaintiff, Class Counsel, other Plaintiff's counsel, any Final Class Member, the Settlement Administrator, or any other person or entity, any payment, credit, or amounts other than the Settlement Amount.

(b)     Class Counsel shall be responsible for determining the amount of the Final Class Member Settlement Benefits that are allocable to each In-Force Policy and each Terminated Policy such that the Final Class Member Settlement Benefits provided with respect to each policy are in the same proportion to the amount of alleged damages for that policy set forth in the Mills Supplemental Report.

(c)     North American shall fund the Settlement Escrow Account to be established by Class Counsel with $39 million in cash within ten (10) business days following Preliminary Approval of the Settlement. Within ten (10) business days after finalization of the Accounting to be made pursuant to Section 2.2(b) below, (i) if the Accumulation Value Credits to be provided to Final Class Members with respect to policies then in force exceed $20 million, then the Settlement Administrator shall pay to North American from the Settlement Escrow Account an amount of cash corresponding to such excess in order to be paid as Accumulation Value Credits or (ii) if the Accumulation Value Credits to be provided to Final Class Members with respect to policies then in force is less than $20 million, North American will provide additional funding of the Settlement Escrow Account in the amount by which $20 million exceeds the Accumulation Value Credits to be provided to Final Class Members.

(d)     The funds deposited to the Settlement Escrow Account pursuant to Section 2.1(c) and any earnings thereon shall be used to pay: (i) all Settlement Administration Expenses; (ii) any Service Award; (iii) any Class Counsel's Fees and Expenses; and (iv) all payments to Terminated Policyowners.

(e)     The Settlement Escrow Account, and all earnings thereon, shall be deemed to be in the Court's custody and shall remain subject to the jurisdiction of the Court until such time as the funds shall have been disbursed pursuant to the terms of this Agreement or further order of the Court.

(f)     The funds deposited in the Settlement Escrow Account shall be invested in instruments, accounts, or funds backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof. Such permissible investments include investments in a United States Treasury money market fund or a bank account that is either: (a) fully insured by the Federal Deposit Insurance Corporation; or (b) secured by instruments backed by the full faith and credit of the United States Government. The Parties and their respective counsel shall have no responsibility for or liability whatsoever with respect to investment decisions made for the Settlement Escrow Account. All risks related to the

investment of the funds deposited in the Settlement Escrow Account shall be borne solely by the Class.

(g)     The Parties agree that this is a non-reversionary settlement and that there shall be no reversion of any portion of the funds deposited to the Settlement Escrow Account to North American for it to keep for itself, unless the Order and Judgment is not entered or is overturned on appeal or review.

2.2     Distribution of the Final Class Member Settlement Benefits

(a)     After payment of Settlement Administration Expenses and any Class Counsel's Fees and Expenses and any Service Award, the remainder of the Settlement Amount will be the Final Class Member Settlement Benefits distributed among the In-force and Terminated Policies. Such amounts shall be distributed *pro rata* to the Final Class Members in accordance with the alleged damages as set forth in the Mills Supplemental Report, as follows:

>    (i)     In-Force Policyowners will be provided with their *pro rata* share of the Final Class Member Settlement Benefits by an increase to the accumulation value of each In-Force Class Policy owned by each such Final Class Member (an "Accumulation Value Credit").

>    (ii)     Terminated Policyowners will be provided with their *pro rata* share of the Final Class Member Settlement Benefits by a cash payment issued in the form of a check drawn on the Settlement Escrow Account.

(b)     Within thirty (30) calendar days after the Final Settlement Date, Class Counsel shall provide Defendant's counsel the Accounting. The form of the Accounting shall conform in all material respects to the examples provided by Class Counsel to Defendant's Counsel on July 7, 2023, and July 15, 2023. Any dispute about such Accounting shall be submitted first to the Mediator for resolution within fourteen (14) calendar days after Counsel provides the Accounting, and then, absent a stipulated resolution, the Court.

(c)     Within thirty (30) calendar days of Defendant's counsel's receipt of the Accounting or, in the event of a dispute, within ten (10) calendar days after resolution of any disputes related to the Accounting, (i) the Settlement Administrator will notify the Parties of the Distribution Date, which shall be not less than seven (7) nor more than ten (10) calendar days following such notification. On the Distribution Date, (i) the Settlement Administrator will send for delivery to each Final Class Member with a Terminated Policy by U.S. mail, first-class postage prepaid, a settlement check in the amount of the share of the Final Class Member Settlement Benefits to which he/she/it is entitled, and (ii) North American will commence applying Accumulation Value Credits for each In-Force Policy that remains in-force and will make such credits effective for each such policy as of the Policy Credit Date. Accumulation Value Credits will be automatically made and settlement checks will be automatically mailed without any proof of claim or further action on the part of the Final Class Members. Settlement checks sent pursuant to this provision will expire 180 days after issuance. Within thirty (30)

calendar days after applying the Accumulation Value Credits to the In-Force Policies with the latest Policy Credit Date, North American will certify to Class Counsel that it has complied with its obligation to apply such Accumulation Value Credits. North American will provide a certification on the same timeline following any redistribution as described in Section 2.2(e) below.

(d)     For any Post-Settlement Terminated Policies, North American shall (i) transfer, within forty-five (45) calendar days of the Distribution Date, via wire to the Settlement Escrow Account, on a dollar-for-dollar basis the total amount of the Accumulation Value Credits that would have been provided with respect to Post-Settlement Terminated Policies if they had remained in-force on their Policy Credit Dates, and (ii) provide the Settlement Administrator and Class Counsel with a list of all Post-Settlement Terminated Policies and the Accumulation Value Credits they would have received if their policies had remained in-force on their Policy Credit Dates. The Class Administrator shall then, within thirty (30) calendar days of receipt, send for delivery by U.S. mail, first-class postage prepaid, a settlement check for such amounts to each Final Class Member with a Post-Settlement Terminated Policy.

(e)     Within nine (9) months after the Distribution Date, the Settlement Administrator shall determine the amount of funds in the Settlement Escrow Account equal to the amount of any checks sent pursuant to Section (c)(i) that have not been cashed, and that amount, less any Settlement Administration Expenses incurred or to be incurred in complying with this paragraph, shall be redistributed on a *pro rata* basis to Final Class Members who previously cashed the checks they received or who received an Accumulation Value Credit, to the extent feasible and practical in light of the expenses of administering such subsequent payments. No later than fourteen (14) calendar days before the Redistribution Date, Defendant shall provide to Class Counsel and the Settlement Administrator a list of the Final Class Policies that are then in-force. Policyowners of those in-force policies will be provided with their *pro rata* share of the redistribution by an Accumulation Value Credit on the first monthly deduction day for that policy following the Redistribution Date, and policyowners of policies that are not in-force will be provided with their *pro rata* share of the redistribution by check. The Settlement Administrator shall transfer to Defendant, via wire from the Settlement Escrow Account, on a dollar-for-dollar basis the total amount necessary to fund the Accumulation Value Credits for the redistribution. To the extent Defendant is unable to provide an Accumulation Value Credit because a policy terminates prior to that policy's first monthly deduction day following the Redistribution Date, Defendant shall transfer to the Settlement Escrow Account, via wire on a dollar-for-dollar basis the amount necessary to send that policyowner a redistribution check. A redistribution will be deemed infeasible or impractical if, in the Settlement Administrator's judgment, the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

(f)     The Parties and their respective counsel shall not be responsible for any claims, damages, liabilities, losses, suits, or actions arising out of, or relating to the distributions made by the Settlement Administrator, including determinations of ownership of a Policy.

2.3     Representation and Warranty of Transferees of Policies.

        Each Final Class Member who or which obtained its interest in any Class Policy subsequent to the issuance of the policy by North American represents and warrants that it obtained any and all claims with respect to such Policy.

2.4     Defendant's Covenant Not to Sue/Assert as a Defense.

        Defendant shall forever be barred from taking and shall not take any legal action (including asserting as an affirmative defense or counterclaim) that seeks to void, rescind, cancel, have declared void, or seek to deny coverage under or deny a death claim for any Final Class Member on a Classic Term UL policy because of an alleged lack of valid insurable interest or as stranger originated life insurance ("STOLI") under any applicable law or equitable principles, except as set forth below. The covenant set forth in this paragraph is solely prospective, and it does not apply to any actions taken by Defendant in the past. Nothing contained in this Agreement shall otherwise restrict Defendant from: (i) following its normal procedures and any applicable legal requirements regarding claims processing, including but not limited to confirming the death of the insured; determining the proper beneficiary to whom payment should be made in accordance with applicable laws, the terms of the policy, and policy specific documents filed with Defendant; and investigating and responding to competing claims for death benefits; (ii) enforcing contract terms and applicable laws with respect to misstatements regarding the age, gender, or smoking status of the insured or with respect to any other misrepresentation allegedly made on or related to the application for, or otherwise made in applying for, an insurance policy; (iii) in the event any Final Class Member initiates after the Final Approval Date a legal proceeding concerning any Released Claim, asserting any affirmative defenses or counterclaim in such litigation; or (iv) complying with any court order, law or regulatory requirements or requests.

## 3. Releases and Waivers

        3.1     Effective as of the Final Settlement Date, the Releasing Parties, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, fully, finally, and forever release and discharge the Releasees of and from all Released Claims.

        3.2     The Releasing Parties expressly agree that they shall not now or hereafter institute, maintain, assert, join, or participate in, either directly or indirectly, on their own behalf, on behalf of a class, or on behalf of any other person or entity, any action or proceeding of any kind against the Releasees asserting Released Claims.

        3.3     (a) With respect to any Released Claims under this Agreement, Plaintiff and every Final Class Member acknowledge that it is possible that unknown losses or claims exist or might exist and that present losses may have been underestimated in amount.  Plaintiff and every Final Class Member are deemed to acknowledge and understand that they are familiar with principles of law such as and including Section 1542 of the Civil Code of the State of California, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT**

**TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Plaintiff, on behalf of itself and as representative of the Final Class Members, and each Final Class Member are hereby deemed upon the Final Settlement Date to knowingly and voluntarily waive any and all provisions, rights, or benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. The Releasing Parties may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Releasing Parties upon the Final Settlement Date, shall be deemed to have, and by operation of the Order and Judgment shall have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct relating to the Released Claims that is negligent, intentional, with or without malice, or any breach of any duty, law, or rule without regard to subsequent discovery or existence of such different or additional facts. The Parties expressly acknowledge and each other Releasing Party and Released Party by operation of law shall be deemed to have acknowledged that the inclusion of Unknown Claims among Released Claims was separately bargained for and a material element of the Settlement.

(b) Plaintiff acknowledges that Class Counsel have advised it and that it is familiar with the provisions of Section 1542 of the California Civil Code, as well as the provision of any and all comparable or similar statutes or principles of law of any other state or federal jurisdiction that might otherwise be deemed applicable, and that, being aware of Section 1542 and other similar statutes or principles of law, Plaintiff expressly waives any and all rights and benefits conferred by Section 1542 or other similar statutes or principles of law on behalf of itself and on behalf of all Final Class Members. Plaintiff, on behalf of itself and on behalf of all Final Class Members, admits to full knowledge and understanding of the consequences and effect of this waiver.

3.4     Nothing in this Release shall preclude any action to enforce the terms of this Agreement.

3.5     The scope of the Released Claims or Releasees shall not be impaired in any way by the fact, if it arises, that any Final Class Member does not actually receive any portion of the benefits to be provided to such Final Class Member under this Agreement.

3.6     Notwithstanding the foregoing, for purposes of clarification only, this Agreement shall not release Defendant from paying any future death benefits that may be owed.

**4.     Notice to Class Members**

4.1     Subject to the requirements of any orders entered by the Court, no later than 21 calendar days after the Preliminary Approval Date, the Settlement Administrator shall mail a short-form Class Settlement Notice in the form attached hereto as Exhibit B by first-class mail to

12

the addresses on the Notice List. The Parties agree and understand that if more time is needed to prepare the Notice List and mail the Class Settlement Notice, they will agree on another date for mailing the Class Settlement Notice, unless otherwise ordered by the Court.

4.2     The Class Settlement Notice shall advise Class Members of their right to opt out of the Class during the Second Opt-Out Period and the deadline to do so.

4.3     The mailing of a Class Settlement Notice to any person or entity that is not in the Class shall not render such person or entity a part of the Class or otherwise entitle such person to participate in this Settlement.

4.4     Within 5 business days after the Preliminary Approval Date, Class Counsel will deliver the Notice List to the Settlement Administrator. The Parties agree and understand that if more time is needed to prepare the Notice List, they will agree on another date for delivering the Notice List to the Settlement Administrator, unless otherwise ordered by the Court. Defendant further agrees to provide all other data in Defendant's possession that is reasonably necessary for Class Counsel to effectuate the distribution of Class Settlement Notice, allocation of the Settlement Amount, and cash payments to the Final Class Members in accordance with the other provisions of this Settlement Agreement.

4.5     The Settlement Administrator will run an update of the last known addresses provided by Defendant and Class Counsel through the National Change of Address database before initially mailing the Class Settlement Notice. If a Class Settlement Notice is returned to the Settlement Administrator as undeliverable, the Settlement Administrator will endeavor to: (i) re-mail any Class Settlement Notice so returned with a forwarding address; and (ii) make reasonable efforts to attempt to find an address for any returned Class Settlement Notice that does not include a forwarding address. The Settlement Administrator will endeavor to re-mail the Class Settlement Notice to every person and entity in the Notice List for which it obtains an updated address. If any Class Member is known to be deceased, the Class Settlement Notice will be addressed to the deceased Class Member's last known address and "To the Estate of [the deceased Class Member]."

4.6     The Settlement Administrator will establish, maintain, and update a Class Website to provide relevant information to Class Members regarding the Settlement, including copies of the Class Settlement Notice and certain non-confidential court filings and orders related to the Settlement.

**5.     Responses to Class Settlement Notice**

5.1     Any Class Member that wishes to be excluded from the Class must submit to the Settlement Administrator a written request for exclusion sent by U.S. mail and postmarked no later than 45 calendar days after the Notice Date. A list reflecting all valid requests for exclusion shall be filed with the Court, by Class Counsel, prior to the Fairness Hearing.

5.2     Exclusion requests must: (i) clearly state that the Class Member desires to be excluded from the Class for the Settlement; (ii) must identify by policy number the Policy(ies) to be excluded; and (iii) be signed by such person or entity or by a person providing a valid power of attorney to act on behalf of such person or entity.

13

5.3     If the Settlement Administrator determines that a person or entity submitting a request for exclusion with respect to a Class Policy is not the same person or entity reflected in the Notice List, then the Settlement Administrator shall require the person or entity submitting the request for exclusion to provide proof of ownership of the Policy or Policies in question.

5.4     To the extent there are conflicting elections of Owners as it relates to a Class Policy, including any election that purports to split or divide exclusion from or participation in the Class with respect to the same Class Policy, or to the extent the Parties or their respective counsel have concerns regarding the ownership rights of Class Members, the Court shall resolve all disputes or issues regarding ownership of a policy or exclusion of a Class Policy. Any disputes relating to conflicting elections or challenges to ownership of a Class Policy must be brought to the attention of the Court within 14 calendar days after the close of the Second Opt-Out Period.

5.5     The Settlement Administrator shall maintain the post office box to which exclusion requests are required to be sent, monitor exclusion requests for accuracy and completeness, request any needed clarifications, and provide copies of all such materials to Class Counsel and Defendant's Counsel.

5.6     Any Class Member that does not file a timely written request for exclusion in accordance with this Section shall be bound by all subsequent proceedings, orders, and judgments in this Action.

5.7     Class Members may object to this Settlement by filing a written objection with the Court and serving any such written objection on counsel for the respective Parties (as identified in the Class Settlement Notice) no later than 45 calendar days after the Notice Date, or as otherwise determined by the Court. Unless otherwise ordered by the Court, the objection must contain:
(1) the full name, address, telephone number, and email address, if any, of the Class Member; (2) Policy number; (3) a written statement of all grounds for the objection accompanied by any legal support for the objection (if any); (4) copies of any papers, briefs, or other documents upon which the objection is based; (5) a list of all persons who will be called to testify in support of the objection (if any); (6) a statement of whether the Class Member intends to appear at the Fairness Hearing; and (7) the signature of the Class Member or his/her counsel. If an objecting Class Member intends to appear at the Fairness Hearing through counsel, the written objection must also state the identity of all attorneys representing the objecting Class Member who will appear at the Fairness Hearing. Unless otherwise ordered by the Court, Class Members who do not timely make their objections as provided in this Paragraph will be deemed to have waived all objections and shall not be heard or have the right to appeal approval of the Settlement. The Class Settlement Notice shall advise Class Members of their right to object and the manner required to do so.

6.     **Fees, Expenses, and Service Award**

6.1     Class Counsel will move for attorneys' fees not to exceed 33 1/3% of the value of all benefits provided by this Settlement to the Final Class Members, capped at 33 1/3% of the Settlement Amount (*i.e.*, will not exceed $19,666,666.67). Class Counsel may also move for

reimbursement of expenses incurred by Class Counsel in prosecuting this Action; however, Class Counsel will not seek reimbursement of its expenses in excess of $1,700,000.00 minus Settlement Administration Expenses. Any award of fees or expenses to Class Counsel and all Settlement Administration Costs shall be paid exclusively from the Settlement Escrow Account. North American agrees not to oppose Plaintiff's motion for Class Counsel's Fees and Expenses to the extent Plaintiff's request does not exceed the amounts set forth above.

6.2     Class Counsel's Fees and Expenses, as awarded by the Court, may be paid from the Settlement Escrow Account, at Plaintiff's option, immediately upon entry of the Fees and Expenses Order; provided, however, that if Class Counsel seeks to draw down any portion of Class Counsel's Fees and Expenses prior to the Fees and Expenses Order becoming final shall secure the repayment of the amount drawn down (plus one year of interest at the rate of interest published by the Wall Street Journal for one-year U.S. Treasury Bills) by a letter of credit or letters of credit on terms and by banks acceptable to Defendant. The Fees and Expenses Order becomes final when the time for appeal or to seek permission to appeal from the Fees and Expenses Order has expired or, if appealed, has been affirmed by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. In order to receive distribution of funds prior to the Fees and Expenses Order becoming final, Class Counsel shall be required to provide the Settlement Administrator or the escrow agent or administrator of the Settlement Escrow Account the approved letter(s) of credit in the amount of its requested draw-down (plus one year of interest at the rate of interest published by the Wall Street Journal for one-year U.S. Treasury Bills), and Class Counsel shall be required to reimburse the Settlement Escrow Account within 30 business days all or the pertinent portion of the amount drawn-down with interest, calculated as the rate of interest published in the Wall Street Journal for 3-month U.S. Treasury Bills as of the close on the date that the draw-down was distributed, if Final Approval is not granted or if the Fees and Expenses Order is reduced or overturned on appeal. The Settlement Administrator, escrow agent, or administrator of the Settlement Escrow Account may present the letter(s) of credit in the event Class Counsel fails to honor the obligation to repay the amount withdrawn.

6.3     Class Counsel will, in its sole discretion, allocate and distribute the fees and expenses that they receive pursuant to this Settlement among Class Counsel and any and all other counsel, if applicable.

6.4     Plaintiff will move for a Service Award to be paid from the Settlement Escrow Account in the amount up to $25,000. The purpose of such award shall be to compensate Plaintiff for efforts undertaken on behalf of the Class as the Class Representative. North American will not oppose Plaintiff's motion. The Service Award shall be made to Plaintiff in addition to, and shall not diminish or prejudice in any way, any settlement relief which it may be eligible to receive. All sums paid to Plaintiff pursuant to this paragraph shall be paid from the Settlement Escrow Account.

6.5     After Preliminary Approval of the Settlement, all Settlement Administration Expenses may be paid from the Settlement Escrow Account to the Settlement Administrator. The first $50,000 of payments from the Settlement Escrow Account to the Settlement Administrator shall be on a nonrefundable basis.

6.6     The Parties shall not be liable or obligated to pay any fees, expenses, or disbursements to any person, either directly or indirectly, in connection with the Action, this Agreement, or the Settlement, other than those expressly provided in this Agreement, by reason of the settlement. Each Party shall be responsible for its own expenses, including without limitation amounts owed to experts and other consultants retained by such party, except that Class Counsel may apply for an award of expenses and costs as described in this Section.

6.7     The Parties agree that the Settlement is not conditioned on the Court's approval of the Service Award or Class Counsel's Fees and Expenses.

## 7.     Tax Reporting and No Prevailing Party

7.1     Any person or entity receiving any payment or consideration pursuant to this Agreement shall alone be responsible for the reporting and payment of any federal, state and/or local income or other form of tax on any payment or consideration made pursuant to this Agreement, and Defendant shall have no obligations to report or pay any federal, state and/or local income or other form of tax on any payment or consideration made pursuant to this Agreement, and has no responsibility to offer – and expressly disclaims – any tax advice to any person or entity in respect of this Settlement.

7.2     All taxes resulting from any tax liabilities of the Settlement Escrow Account shall be paid solely out of the Settlement Escrow Fund.

7.3     No Party shall be deemed the prevailing party of this Action for any purposes whatsoever.

## 8.     Preliminary and Final Approval

8.1     Plaintiff will file a motion seeking preliminary approval of the Settlement no later than July 17, 2023.

8.2     To the extent the Court finds that the Settlement does not meet the standard for preliminary approval, the Parties will negotiate in good faith to modify the Settlement directly or with the assistance of the Mediator and endeavor to resolve the issue(s) to the satisfaction of the Court. Notwithstanding anything in this Agreement, if the total percentage of Class Members (as measured either by count of policies or percentage of benefits to be provided) who submit timely and valid requests for exclusion from the Class during the Second Opt-Out Period, or on whose behalf timely and valid requests for such exclusion are submitted during the Second Opt-Out Period, exceeds ten percent (10%), North American shall have the option, but not the obligation, to terminate this Agreement no later than ten (10) business days after the later of (i) the expiration of the Second Opt-Out Period, or (ii) North American's receipt of information sufficient to identify which Class Members have timely and validly opted out of the Class.

8.3     Subject to Court approval, Class Counsel agrees to file a Motion for Plaintiff's Service Award and Class Counsel's Fees and Expenses no later than 14 days before the Second Opt-Out Period and objection deadline expires. Class Counsel further agrees to file a Motion for Final Approval of the Settlement. The Motion for Final Approval of the Settlement will include

16

a proposed Order and Judgment materially in the form set forth in Exhibit D hereto, subject to modification by agreement of the Parties.

8.4    Within ten (10) calendar days following the filing of this Agreement with the Court, Defendant shall serve notices of the proposed Settlement upon the appropriate officials in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.

## 9.    Other Provisions

9.1    The Parties: (i) acknowledge that it is their intent to consummate this Agreement; (ii) agree to cooperate in good faith to the extent reasonably necessary to effect and implement all terms and conditions of the Agreement and to exercise their best efforts to fulfill the foregoing terms and conditions of the Agreement; and (iii) agree to cooperate in good faith to obtain preliminary and final approval of the Settlement and to finalize the Settlement.

9.2    The Parties agree that the amounts paid in the Settlement and the other terms of the Settlement were negotiated in good faith, and at arm's length by the Parties, with the assistance of the Mediator, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

9.3    No person or entity shall have any claim against Class Counsel, the Settlement Administrator, Defendant's counsel or any of the Releasees with respect to actions taken substantially in accordance with the Agreement and the Settlement contained therein or further orders of the Court.

9.4    Defendant specifically and generally denies any and all liability or wrongdoing of any sort with regard to any of the Claims asserted or that could have been asserted in the Action and makes no concessions or admissions of liability or misconduct of any sort.  Neither this Agreement nor the fact or terms of the Settlement nor any drafts or communications related thereto, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the Settlement: (i) is or may be deemed to be or may be used as an admission, concession, presumption, proof or evidence of, the validity of any Claims, or of any fault, wrongdoing or liability of the Releasees, or any of them or of any damages to the Class or of any infirmity of any of Defendant's defenses; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault, liability, misconduct or omission of any kind whatsoever of the Releasees, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Nothing in this paragraph or Agreement shall prevent Defendant and/or any of the Releasees from using this Agreement and Settlement or the Order and Judgment in any action that may be brought against them in order to support a defense or counterclaim using principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.5    North American represents that it has not entered into any prior settlement agreements regarding the claims at issue in the Action with any Final Class Member.

9.6    If this Agreement or the Settlement fails to be approved, fails to become effective, or otherwise fails to be consummated, is declared void, or if there is no Final

Settlement Date, then the Parties will be returned to status *quo ante* as of June 17, 2023, as if this Agreement had never been negotiated or executed, with the right to assert in the Action any argument or defense that was available to it at that time, except that each Party shall bear one half of the Settlement Administration Expenses and all interest earned on the funds in the Settlement Escrow Account shall be paid to North American.

9.7    Nothing in this Agreement shall change the terms of any Policy.  Nothing in this Agreement shall preclude any action to enforce the terms of this Agreement.

9.8    The Parties agree, to the extent permitted by law, that all agreements made and orders entered during the course of the Action relating to confidentiality of information shall survive this Agreement.  To the extent Class Counsel or the Settlement Administrator requires Confidential Information to effectuate the terms of this Agreement, the terms of the Protective Order shall apply to any information necessary to effectuate the terms of this Agreement. Within 30 days of the Final Settlement Date, Plaintiff shall confirm that it has returned to Defendant or destroyed all Confidential Information excluding any Confidential Information reasonably necessary to effectuate the terms of this Agreement and distribution of funds to Final Class Members. Notwithstanding Plaintiff's agreement to return or destroy Confidential Information, Class Counsel may retain: (i) attorney work product; (ii) email communications between the Parties; and (iii) all documents filed with the Court including those filed under seal. Any retained Confidential Information shall continue to be protected under the Protective Order.

9.9    The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.  No waiver of any provision of this Agreement or consent to any departure by either Party therefrom shall be effective unless the same shall be in writing, signed by the Parties or their counsel, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.  No amendment or modification made to this Agreement pursuant to this paragraph shall require any additional notice to the Class Members, including written or publication notice, unless ordered by the Court.  Plaintiff and Class Counsel agree not to seek such additional notice. Class Counsel shall provide updates on any amendments or modifications made to this Agreement on the Class Website as described in Section 4.6.

9.10    Each person executing the Agreement on behalf of any party hereto hereby warrants that such person has the full authority to do so.

9.11    The Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Furthermore, electronic signatures on PDF versions or copies of original signatures may be accepted as actual signatures and will have the same force and effect as an original manual signature.  A complete set of executed counterparts shall be filed with the Court.

9.12    The Agreement shall be binding upon, and inure to the benefit of, the successors, heirs, and assigns of the Parties hereto, but this Agreement is not designed to and does not create any third-party beneficiaries either express or implied, except as to the Class Members.

9.13    The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either Party. No Party shall be deemed the drafter of this Agreement. The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties and their counsel. Each of the Parties and their respective counsel cooperated in the drafting and preparation of the Agreement. In any construction to be made of the Agreement, the Agreement shall not be construed against any Party.

9.14    Other than necessary disclosures made to the Court or the Settlement Administrator or the Parties' retained experts, this Agreement and all related information and communication shall be held strictly confidential by Plaintiff, Class Counsel, and their agents until such time as the Parties file this Agreement with the Court.

9.15    The Parties and their counsel further agree that their discussions and the information exchanged in the course of negotiating this Settlement are confidential under the terms of the mediation agreement signed by the Parties in connection with the mediation session with the Mediator and any follow-up negotiations between the Parties' counsel. Such exchanged information was made available on the condition that neither the Parties nor their counsel may disclose it to third parties (other than the Parties' counsel, accountants or insurers, and any experts or consultants retained by the Parties in connection with the Action and subject to confidentiality restrictions), that it not be the subject of public comment, and that it not be publicly disclosed or used by the Parties or their counsel in any way in the Action should it not settle, or in any other proceeding; provided however, that nothing contained herein shall prohibit the Parties from referring to the existence of such information in connection with the Settlement of the Action.

9.16    This Agreement shall be governed by and interpreted in accordance with the laws of the State of Iowa, without reference to its choice-of-law or conflict-of-laws rules.

9.17    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement and any discovery sought from or concerning objectors to this Agreement. All Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement.

9.18    Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturday and Sunday) express delivery service as follows:

(a)    If to Defendant, then to:

William H. Higgins
**ALSTON & BIRD, LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC  28203-6818
william.higgins@alston.com

Andrew J. Tuck
**ALSTON & BIRD, LLP**
1201 W. Peachtree St., Suite 4900
Atlanta, GA 30309-3424
andy.tuck@alston.com

      (b)    If to Plaintiff, then to:

Steven Sklaver
Krysta Pachman
Glenn Bridgman
Nicholas Spear
Halley Josephs
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars
Los Angeles, California 90067
ssklaver@susmangodfrey.com
kpachman@susmangodfrey.com
gbridgman@susmangodfrey.com
nspear@susmangodfrey.com
hjosephs@susmangodfrey.com

Seth D. Ard
Ryan Kirkpatrick
**SUSMAN GODFREY LLP**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

      9.19    The Parties reserve the right to agree between themselves on any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

      9.20    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of any court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  Each other day of the period to be computed shall be included, including the last day thereof, unless such last day is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court on a day in which the court is closed during regular business hours.  In any such event, the period runs until the end of the next day that is not a Saturday, a Sunday, a legal holiday, or a day on which the court is closed.  When a time period is less than seven business days, intermediate Saturdays, Sundays, legal holidays, and days on which the court is closed shall be excluded from the computation.  As used in this Paragraph, legal holidays include New Year's Day, Dr. Martin Luther King Jr. Day, Lincoln's Birthday, Washington's Birthday, Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Election Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a holiday by Federal law.

      Stipulated and agreed to by:

**PHT Holding II LLC, on behalf of itself and as representative of the Class Members**

By: John McFarland

Title: Manager

Date: 7/17/2023

**North American Company for Life and Health Insurance**

By: Brian Hansen

Title: General Counsel, SVP & Secretary

Date: July 17, 2023

**APPROVED ONLY AS TO FORM**

Steven Sklaver
Krysta Pachman
Glenn Bridgman
Nicholas Spear
Halley Josephs
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars
Los Angeles, California 90067
ssklaver@susmangodfrey.com
kpachman@susmangodfrey.com
gbridgman@susmangodfrey.com
nspear@susmangodfrey.com
hjosephs@susmangodfrey.com

Seth D. Ard
Ryan Kirkpatrick
**SUSMAN GODFREY LLP**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

*Class Counsel and Counsel for Plaintiff*

Andrew J. Tuck
**ALSTON & BIRD LLP**
1201 W. Peachtree St., Suite 4900
Atlanta, GA 30309-3424
andy.tuck@alston.com

William H. Higgins
**ALSTON & BIRD, LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
william.higgins@alston.com

*Counsel for Defendant North American Company for Life and Health Insurance*

# EXHIBIT A

**EXHIBIT: CTUL 1 AND CTUL 2 PLAN CODES**

| Product Name | Plan Code | Policy Form | Short Name |
|---|---|---|---|
| Classic Term UL 1 | 181100 | LS35A | LTPR |
| Classic Term UL 1 | 181101 | LS35A | LTPRUS |
| Classic Term UL 1 | 181104 | LS35E | LTPRUS89 |
| Classic Term UL 1 | 181116 | LS35A | LTP95 |
| Classic Term UL 1 | 182100 | LS35A | LTNS |
| Classic Term UL 1 | 182101 | LS35A | LTNSUS |
| Classic Term UL 1 | 182102 | LS35A | THLTNS |
| Classic Term UL 1 | 182103 | LS35A | THLTNSUS |
| Classic Term UL 1 | 182104 | LS35E | LTNSUS89 |
| Classic Term UL 1 | 182116 | LS35A | LTN95 |
| Classic Term UL 1 | 183100 | LS35A | LTSM |
| Classic Term UL 1 | 183101 | LS35A | LTSMUS |
| Classic Term UL 1 | 183102 | LS35A | THLTSM |
| Classic Term UL 1 | 183103 | LS35A | THLTSMUS |
| Classic Term UL 1 | 183104 | LS35A | LTSMUS89 |
| Classic Term UL 1 | 183116 | LS35A | LTS95 |
| Classic Term UL 2 | 181105 | LS58B | LTPR90 |
| Classic Term UL 2 | 181106 | LS58B | LTPRUS90 |
| Classic Term UL 2 | 181108 | LS58B | LTPRMASS |
| Classic Term UL 2 | 181109 | LS58B | LTPR92 |
| Classic Term UL 2 | 181111 | LS58B | LTPR93 |
| Classic Term UL 2 | 181112 | LS58B | LTPRU93 |
| Classic Term UL 2 | 181114 | LS58B | LTP93 |
| Classic Term UL 2 | 181115 | LS58B | LTPU93 |
| Classic Term UL 2 | 182105 | LS58B | LTNS90 |
| Classic Term UL 2 | 182106 | LS58B | LTNSUS90 |
| Classic Term UL 2 | 182108 | LS58B | LTNSMASS |
| Classic Term UL 2 | 182109 | LS58B | LTNS92 |
| Classic Term UL 2 | 182111 | LS58B | LTNS93 |
| Classic Term UL 2 | 182112 | LS58B | LTNSU93 |
| Classic Term UL 2 | 182114 | LS58B | LTN93 |
| Classic Term UL 2 | 182115 | LS58B | LTNU93 |
| Classic Term UL 2 | 183105 | LS58B | LTSM90 |
| Classic Term UL 2 | 183106 | LS58B | LTSMUS90 |
| Classic Term UL 2 | 183108 | LS58B | LTSMMASS |
| Classic Term UL 2 | 183109 | LS58B | LTSM92 |
| Classic Term UL 2 | 183111 | LS58B | LTSM93 |
| Classic Term UL 2 | 183112 | LS58B | LTSMU93 |
| Classic Term UL 2 | 183114 | LS58B | LTS93 |
| Classic Term UL 2 | 183115 | LS58B | LTSU93 |

# EXHIBIT B

COURT AUTHORIZED
LEGAL NOTICE

**If you own or owned a Classic Term UL I or Classic Term UL II life insurance policy issued or insured by North American Company for Life and Health Insurance or its predecessors, you may be affected by a class action settlement**

www.coiclassaction-na.com

**North American Company COI Settlement**
c/o JND Legal Administration
P.O. Box 11037
Seattle, WA 98111

«Barcode»

Postal Service: Please do not mark barcode

«Full_Name»
«CF_CARE_OF_NAME»
«CF_ADDRESS_1»
«CF_ADDRESS_2»
«CF_CITY», «CF_STATE» «CF_ZIP»
«CF_COUNTRY»

A proposed settlement has been reached in a class action lawsuit called *PHT Holding II LLC v. North American Company for Life and Health Insurance*, Case No. 4:18-cv-00368-SMR-HCA (S.D. Iowa) (the "Settlement"). Records indicate you may be affected. This Notice summarizes your rights and options. More details are available at www.coiclassaction-na.com.

**What is this about?** PHT Holding II LLC ("Plaintiff") alleges that North American Company for Life and Health Insurance ("Defendant") breached the contracts with Classic Term UL I and Classic Term UL II policyowners by imposing cost of insurance ("COI") rates that were in violation of the policy provisions. Defendant denies Plaintiff's claims. The Court has not decided who is right or wrong. Instead, both sides have agreed to the Settlement to avoid risks, costs, and delays of further litigation.

**Who is affected?** The Class consists of all current and former owners of Classic Term UL I or Classic Term UL II issued or insured by Defendant, or its predecessors, during the Class Period. The Class Period is defined in the FAQ Section at www.coiclassaction-na.com. Excluded from the Class are Defendant, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing; anyone employed with Plaintiff's counsel's firms; any Judge to whom this case is assigned, and his or her immediate family; and any policyowner that validly opted-out in the Original Opt-Out Period which expired on January 3, 2023. Records indicate you may be a Class Member. This Notice summarizes your rights and options.

**What does the Settlement provide?** Defendant will provide a total settlement amount of $59 million to be used for cash payments for terminated policies, account credits for active policies, settlement administration costs, Plaintiff's attorneys' fees and expenses, and a Service Award for Plaintiff (up to $25,000). Class Counsel will move for attorneys' fees not to exceed 33 1/3% of the value of all benefits provided by this Settlement to the Final Class Members, provided that all Class Counsel Fees and Expenses and all Settlement Administration Expenses, combined, will not exceed $21,366,666.67. The benefits will be distributed to Class Members on a pro-rata basis calculated by dividing that Class Member's alleged COI overcharges by the total alleged overcharge damages allegedly incurred by the Class Members. More details are in a document called the Settlement Agreement, which is available at www.coiclassaction-na.com.

**What are my options?** You can do nothing, ask to be excluded, or object to the Settlement.

**Do nothing**. Remain in the Class and automatically receive a credit on your active policy(ies) or a payment in the mail if your policy(ies) is terminated at the time of distribution. You will be bound by the Settlement, and you will give up your right to sue Defendant for claims that were or could have been alleged in this case.

**Ask to be Excluded ("Opt Out")**. Remove yourself from the Class and get no benefits from the Settlement. Keep your right to sue Defendant, at your own expense, for the claims in this case. If you previously opted out of this Action, you do not need to opt out again.

**Object**. If you do not opt out, you may object or tell the Court what you do not like about the Settlement. The purpose of an objection to the Settlement is to persuade the Court not to approve the proposed Settlement. A successful objection to the Settlement may mean that the objector and other members of the Class are not bound by the Settlement.

The deadline to opt out or object is **[date, 2023]**. For more details about your rights and options and how to opt out or object, go to www.coiclassaction-na.com.

**What happens next?** The Court will hold a Fairness Hearing on [**date, 2023 at XX CT**] to consider whether the Settlement is fair, reasonable, and adequate; and how much to pay and reimburse Class Counsel and Plaintiff. The Court has appointed Susman Godfrey L.L.P. as Class Counsel. You or your attorney may ask to speak at the hearing at your own expense, but you do not have to.

**How can I get more information?** Go to www.coiclassaction-na.com, call toll-free 1-844-633-0709, or write to North American Company COI Settlement, c/o JND Legal Administration, P.O. Box 11037, Seattle, WA 98111.

*Carefully separate this Address Change Form at the perforation*

*Name:* _____

*Current Address:* _____

_____

_____

*Unique ID:* [JND Unique ID]

| PLACE |
| STAMP |
| HERE |

**Address Change Form**
To make sure your information remains up-to-date in our records, please confirm your address by filling in the above information and depositing this postcard in the U.S. Mail.

North American Company COI Settlement
c/o JND Legal Administration
P.O. Box 11037
Seattle, WA 98111

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA

## NOTICE OF CLASS ACTION SETTLEMENT

# If you own or owned a Classic Term UL I or Classic Term UL II life insurance policy issued or insured by North American Company for Life and Health Insurance or its predecessors, you may be affected by a class action settlement

*A court authorized this notice. This is not a solicitation from a lawyer.*

- A proposed settlement has been reached in a certified class action lawsuit called *PHT Holding II LLC v. North American Company for Life and Health Insurance*, Case No. 4:18-cv-00368-SMR-HCA (the "Settlement").

- PHT Holding II LLC ("Plaintiff") alleges that North American Company for Life and Health Insurance ("Defendant") imposed unlawful cost of insurance ("COI") charges on Classic Term UL I and II policyowners. Plaintiff asserts that North American's failure to lower COI rates when its expectations as to future mortality experience allegedly improved violated the terms of the policyowners' contracts, and that Plaintiff and members of the Class have been damaged as a result. Defendant denies Plaintiff's claims.  Defendant asserts multiple defenses, including that it had no contractual obligation to decrease COI rates. It also asserts that future mortality improvement already was assumed when the COI rates were set at the inception of the contracts. The Court has not decided who is right or wrong. Instead, both sides have agreed to the Settlement to avoid risks, costs, and delays of further litigation.

- If the Court approves the Settlement, Defendant will make available a total settlement amount of $59 million in combined cash payments and Accumulation Value Credits. This amount will be used to make cash payments to terminated policyholders and policy account credits for active policyholders, and to pay settlement administration costs, any Class Counsel's fees and expenses, and any Service Award to the Plaintiff, as further detailed in Question 18.

- You are a Class Member if you own or owned a Classic Term UL I or Classic Term UL II life insurance policy issued or insured by North American Company for Life and Health Insurance, or its predecessors, during the Class Period outlined in Question 7. Excluded from the Class are Defendant, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing; anyone employed with Plaintiff's counsel's firms; and the Judge to whom this case is assigned and her immediate family.

- Your legal rights are affected whether or not you act. ***Please read this Notice carefully***.

| YOUR LEGAL RIGHTS AND OPTIONS | | |
|---|---|---|
| **Do Nothing** | • Get certain benefits from the Settlement — Automatically receive an Accumulation Value Credit on active policy(ies) or a cash payment in the mail if your policy(ies) is terminated at the time of distribution<br>• Be bound by the Settlement<br>• Give up your right to sue Defendant for the claims that were or could have been alleged in this case through the Final Approval Date. | |
| **Ask to be Excluded**<br><br>**("Opt Out")** | • Remove yourself from the Class<br>• Get no benefits from the Settlement<br>• Keep your right to sue Defendant, at your own expense, for the claims in this case<br><br>**If you previously opted out of this Action, you do not need to opt out again** | Postmarked by <mark>Month x</mark>, 2023 |
| **Object** | • Tell the Court what you do not like about the Settlement. The purpose of an objection to the Settlement is to persuade the Court not to approve the proposed Settlement. A successful objection to the Settlement may mean that the objector and other members of the Class are not bound by the Settlement. | Filed and served by <mark>Month x</mark>, 2023 |

• These rights and options—**and the deadlines to exercise them**—are explained in this Notice. The deadlines may be moved, cancelled, or otherwise modified, so please check www.coiclassaction-na.com regularly for updates and further details.

• The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

Questions? Call 1-844-633-0709 or visit www.coiclassaction-na.com

2

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION**.................................................................................................**PAGE x**

    1.    Why was this Notice issued?
    2.    What is this lawsuit about?
    3.    Which life insurance policies are affected by the lawsuit?
    4.    What is a class action and who is involved?
    5.    Why is this lawsuit a class action?
    6.    Why is there a Settlement?

**THE CLASS**...............................................................................................................**PAGE x**

    7.    Am I part of the Class?
    8.    Are there exceptions to being included?
    9.    What if I am still not sure if I am included?

**WHAT CLASS MEMBERS GET** ...................................................................................**PAGE x**

    10.    What does the Settlement provide?
    11.    What am I giving up by staying in the Settlement?

**HOW TO GET A PAYMENT**..........................................................................................**PAGE x**

    12.    How can I get a payment?
    13.    When will I get my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**......................................................**PAGE x**

    14.    How do I ask to be excluded?
    15.    If I don't exclude myself, can I sue Defendant for the same thing later?
    16.    If I exclude myself, can I still get a Settlement payment?

**THE LAWYERS REPRESENTING YOU** .......................................................................**PAGE x**

    17.    Do I have a lawyer in this case?
    18.    How will the lawyers be paid?
    19.    Should I get my own lawyer?

**OBJECTING TO THE SETTLEMENT** ...........................................................................**PAGE x**

    20.    How can I tell the Court if I do not like the Settlement?
    21.    What is the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** .........................................................................**PAGE x**

    22.    When and where will the Court decide whether to approve the Settlement?
    23.    Do I have to come to the hearing?
    24.    May I speak at the hearing?

**IF YOU DO NOTHING** .................................................................................................**PAGE x**

    25.    What happens if I do nothing at all?

**GETTING MORE INFORMATION** ................................................................................**PAGE x**

    26.    How can I get more information?

Questions? Call 1-844-633-0709 or visit www.coiclassaction-na.com

3

## BASIC INFORMATION

**1.  Why was this Notice issued?**

You have a right to know about a proposed Settlement and your rights and options before the Court decides whether to approve the Settlement.

Chief Judge Stephanie M. Rose of the United States District Court for the Southern District of Iowa (the "Court") is in charge of this case. The case is called *PHT Holding II LLC v. North American Company for Life and Health Insurance*, Case No. 4:18-cv-00368-SMR-HCA (S.D. Iowa). PHT Holding II LLC is the Plaintiff in this case. The company being sued, North American Company for Life and Health Insurance, is called the Defendant.

**2.  What is this lawsuit about?**

The class action lawsuit alleges that Defendant breached its contracts with certain policyowners. Plaintiff's policy states, in part:

>**Cost of Insurance.** The cost of insurance for the Insured is determined on a monthly basis. Such cost is calculated as (1) times (2), where: (1) is the cost of insurance rate as described in the Cost of Insurance Rates section. (2) is the net amount at risk, as defined in the Changing Death Benefit Options provision. . . .

>**Cost of Insurance Rates.** The monthly cost of insurance rate is based on the sex, attained age, and rating class of the Insured. Policy duration is also a factor in determining the monthly cost of insurance rates. Attained age for the initial Specified Amount means age nearest birthday on the prior policy anniversary. Attained age for any increase in Specified Amount or increase in net amount at risk applied for when changing Death Benefit options means age nearest birthday on the prior anniversary of the date such increase became effective. Monthly cost of insurance rates are determined by us, based on our expectations as to future mortality experience. Any change in cost of insurance rates applies to all individuals of the same class as the insured. Under no circumstances are cost of insurance rates for insureds in that standard risk class greater than those shown in the Table of Guaranteed Maximum Insurance Rates. Age nearest birthday is used in determining such guaranteed maximum rates.

Plaintiff alleges that Defendant breached these contractual provisions because Defendant failed to lower its cost of insurance rates when its expectations as to future mortality experience allegedly improved, and that Plaintiff and members of the Class have been damaged as a result. Defendant denies Plaintiff's claims and asserts multiple defenses, including that it had no contractual obligation to decrease COI rates and that the COI rates are and have always been in compliance with the contract. It also asserts that future mortality improvement already was assumed when the COI rates were set at the inception of the contracts.

**3.  Which life insurance policies are affected by the lawsuit?**

Classic Term UL I or Classic Term UL II life insurance policies issued or insured by North American Company for Life and Health Insurance, or its predecessors, during the Class Period are affected by the lawsuit. The Class Period is defined in Question 7 of this Notice.

**4.  What is a class action and who is involved?**

In a class action, a person(s) or entity(ies) called a "Class Representative(s)" sues on behalf of all individuals who have a similar claim. Here, Plaintiff represents other eligible policyowners (current and

Questions? Call 1-844-633-0709 or visit www.coiclassaction-na.com

4

former) and together they are called the "Class" or "Class Members." Plaintiff will serve as the Class Representative. Bringing a case, such as this one, as a class action allows resolution of many similar claims of persons and entities that might be economically too small to bring individual actions. One court resolves the issues for all class members, except for those who validly exclude themselves from the class.

---

**5.  Why is this lawsuit a class action?**

The Court decided that the breach of contract claim against Defendant in this lawsuit can proceed as a class action because it met the requirements of Rule 23 of the Federal Rules of Civil Procedure, which governs class actions in federal court. The Court found that:

- There are numerous Class Members whose interests will be affected by this lawsuit;
- There are legal questions and facts that are common to each of them;
- The Class Representative's claims are typical of the claims of the rest of the Class;
- The Class Representative and the lawyers representing the Class will fairly and adequately represent the interests of the Class;
- A class action would be a fair, efficient and superior way to resolve this lawsuit;
- The common legal questions and facts predominate over questions that affect only individual Class Members; and
- The Class is ascertainable because it is defined by identifiable objective criteria.

In certifying the Class, the Court appointed Susman Godfrey LLP as Class Counsel. For more information, visit the Important Documents page at www.coiclassaction-na.com.

---

**6.  Why is there a Settlement?**

Defendant denies any and all liability or wrongdoing of any sort with regard to Plaintiff's allegations. The Court has not decided in favor of Plaintiff or Defendant. Instead, the parties have agreed to the Settlement to avoid the risks, costs, and delays of further litigation. Plaintiff and Class Counsel think the Settlement is in the best interests of the Class and is fair, reasonable, and adequate.

## <u>THE SETTLEMENT CLASS</u>

---

**7.  Am I part of the Class?**

The Class consists of all current and former owners of Classic Term UL I or Classic Term UL II life insurance policies issued or insured by North American Company for Life and Health Insurance, or its predecessors, during the Class Period.

The "Class Period" starts on the following dates:

Questions? Call 1-844-633-0709 or visit www.coiclassaction-na.com

5

| Start Date of Class Period | Classic Term UL I or Classic Term UL II Issue State |
|---|---|
| Oct. 30, 2008 | Illinois, Indiana, Iowa, Kentucky, Louisiana, Rhode Island, West Virginia, and Wyoming |
| Oct. 30, 2010 | Montana and Ohio |
| Oct. 30, 2012 | Alabama, Arizona, Connecticut, Georgia, Hawaii, Maine, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, Washington, and Wisconsin |
| Oct. 30, 2013 | Arkansas, Florida, Idaho, Kansas, Missouri, Nebraska, Oklahoma, and Virginia |
| Oct. 30, 2014 | California, Pennsylvania, and Texas |
| Oct. 30, 2015 | Alaska, Colorado, Delaware, Maryland, Mississippi, New Hampshire, North Carolina, South Carolina, and Washington, D.C. |

### 8.  Are there exceptions to being included?

Yes. Excluded from the Class are Defendant North American Company for Life and Health Insurance, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing; anyone employed with Plaintiff's counsel's firms; any Judge to whom this case is assigned, and his or her immediate family; and any policyowner who validly opted out during the Original Opt-Out Period, which expired on January 3, 2023.

### 9.  What if I am still not sure if I am included?

If you are still not sure whether you are a Class Member, please visit www.coiclassaction-na.com, call the Settlement Administrator toll-free at 1-844-633-0709, or write to: North American Company COI Settlement Administrator, c/o JND Legal Administration, P.O. Box 11037, Seattle, WA 98111.

## WHAT SETTLEMENT CLASS MEMBERS GET

### 10.  What does the Settlement provide?

Defendant will provide a total of $59 million in combined cash payments and Accumulation Value Credits to the Class Members, Class Counsel, the Class Representative, and the Settlement Administrator. After payment of settlement administration costs, Class Counsel's attorneys' fees and expenses, and any service award to the Class Representative (*see* Question 18 below), the Settlement Administrator will distribute the remaining amounts to Class Members on a pro-rata basis calculated by dividing that Class Member's alleged COI overcharges by the total alleged overcharge damages incurred by the Class Members. Class Members with In-Force Policies will receive Accumulation Value Credits and Class Members with Terminated Policies will receive cash payments by check. No portion of the Settlement Fund will be returned to Defendant to keep for itself.

More details are in a document called the Settlement Agreement, which is available at www.coiclassaction-na.com.

Questions? Call 1-844-633-0709 or visit www.coiclassaction-na.com

6

**11.  What am I giving up by staying in the Settlement?**

If you are a Class Member, unless you exclude yourself from the Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against Defendant involving any claims that were released in this Settlement. It also means that all the decisions by the Court will bind you. The Released Claims and Released Parties are defined in the Settlement Agreement. They describe the legal claims that you give up if you stay in the Settlement. The release in the Settlement is a historical release only and does not release any claims arising out of COI deductions made after the Final Approval Date. The Settlement Agreement is available at www.coiclassaction-na.com.

## HOW TO GET A PAYMENT

**12.  How can I get a payment?**

If you are entitled to a payment, you will automatically receive it. No claims need to be filed or submitted.

**13.  When will I get my payment?**

Payments will be distributed by mail to Class Members with Terminated Policies and Accumulation Value Credits will be credited to Class Members with In-Force Policies after the Court grants "final approval" of the Settlement and after all appeals are resolved. If the Court approves the Settlement, there may be appeals. It is always uncertain whether these appeals can be resolved and resolving them can take time. Please be patient.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from the Settlement or you want to keep the right to sue Defendant on your own about the claims released in the Settlement, then you must take steps to get out of the Settlement. This is called excluding yourself—or it is sometimes referred to as "opting out" of the Settlement.

**If you previously opted out of this class action, you do not need to opt out again.**

**14.  How do I ask to be excluded?**

To exclude yourself (or "Opt Out") of the Settlement, you must complete and mail the Settlement Administrator a written request for exclusion. The exclusion request must include the following:

- Your full name, address, telephone number, and email address (if any);
- A statement says that you want to be excluded from the Class;
- The case name (*PHT Holding II LLC v. North American Company for Life and Health Insurance*);
- The Classic Term UL I or Classic Term UL II insurance policy number(s) to be excluded; and
- Your signature.

You must mail your exclusion request **postmarked by Month x, 2023** to:

North American COI Settlement Administrator
c/o JND Legal Administration
P.O. Box 11037
Seattle, WA 98111

**IF YOU DO NOT EXCLUDE YOURSELF BY MONTH X, 2023, YOU WILL REMAIN PART OF THE CLASS AND BE BOUND BY THE ORDERS OF THE COURT IN THIS LAWSUIT.**

Questions? Call 1-844-633-0709 or visit www.coiclassaction-na.com

7

**15.  If I don't exclude myself, can I sue Defendant for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue Defendant for the claims that this Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from this Settlement to continue your own lawsuit. If you properly exclude yourself from the Settlement, you will not be bound by any orders or judgments entered in the Action relating to the Settlement.

**16.  If I exclude myself, can I still get a Settlement payment?**

No. You will not get any money from the Settlement if you exclude yourself.

## THE LAWYERS REPRESENTING YOU

**17.  Do I have a lawyer in this case?**

Yes. The Court has appointed the following lawyers as "Class Counsel."

**Steven G. Sklaver**                          **Seth Ard**
**Krysta Kauble Pachman**               **Ryan Kirkpatrick**
**Glenn C. Bridgman**                       SUSMAN GODFREY LLP
**Nicholas N. Spear**                         1301 Avenue of the Americas, 32nd Floor
**Halley W. Josephs**                         New York, NY 10019-6023
SUSMAN GODFREY LLP                    sard@susmangodfrey.com
1900 Avenue of the Stars, Suite 1400    rkirkpatrick@susmangodfrey.com
Los Angeles, CA 90067-6029             Telephone: 212-336-8330
ssklaver@susmangodfrey.com
kpachman@susmangodfrey.com
gbridgman@susmangodfrey.com
nspear@susmangodfrey.com
hjosephs@susmangodfrey.com
Telephone: 310-789-3100

**18.  How will the lawyers be paid?**

Class Counsel will move for attorneys' fees not to exceed 33 1/3% of the value of all benefits provided by this Settlement to the Final Class Members, provided that all Class Counsel Fees and Expenses and all Settlement Administration Expenses, combined, will not exceed $21,366,666.67. Class Counsel will also seek a Service Award up to $25,000 for Plaintiff for its service as the representative on behalf of the Class.  All such payments will be paid from the $59 million settlement amount made available by Defendant. You will not be responsible for direct payment of any of these fees, expenses, or awards.

**19.  Should I get my own lawyer?**

If you stay in the Class, you do not need to hire your own lawyer to pursue the claims against Defendant. Class Counsel is working on behalf of the Class. However, if you want to be represented by your own lawyer, you may hire one at your own expense and cost.

## OBJECTING TO THE SETTLEMENT

| 20.  How can I tell the Court if I do not like the Settlement? |
| --- |

Any Class Member who does not timely and properly opt out of the Settlement may object to the fairness, reasonableness, or adequacy of the proposed Settlement. Class Members who wish to object to any term of the Settlement must do so,  in writing, by filing a written objection with the Court, and serving copies on Class Counsel and Counsel for Defendant. The written objection must include:

- The case name and number (*PHT Holding II LLC v. North American Company for Life and Health Insurance,* Case No. 4:18-cv-00368-SMR-HCA)

- Your full name, address, telephone number, and email address (if any);

- Your Classic Term UL I or Classic Term UL II insurance policy number(s);

- A written statement of all grounds for the objection accompanied by any legal support for the objection (if any);

- Copies of any papers, briefs, or other documents upon which the objection is based;

- A statement of whether you intend to appear at the Fairness Hearing; and

- Your or your counsel's signature.

If you intend to appear at the Fairness Hearing through counsel, the written objection must also state the identity of all attorneys representing you who will appear at the Fairness Hearing. Your objection, along with any supporting material you wish to submit, must be filed with the Clerk of the Court, with a copy served on Class Counsel and Counsel for Defendant by ==Month x==, **2023** at the following addresses:

| Clerk of the Court |
| --- |
| Clerk of Court<br>U.S. District Court<br>Southern District of Iowa<br>123 East Walnut Street<br>Suite 300<br>Des Moines, IA 50309 |

| Class Counsel | Counsel for Defendant |
| --- | --- |
| **Steven G. Sklaver**<br>**Seth Ard**<br>**Ryan Kirkpatrick**<br>**Krysta Kauble Pachman**<br>**Glenn C. Bridgman**<br>**Nicholas N. Spear**<br>**Halley W. Josephs**<br>SUSMAN GODFREY LLP<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-6029<br>ssklaver@susmangodfrey.com<br>sard@susmangodfrey.com<br>rkirkpatrick@susmangodfrey.com<br>kpachman@susmangodfrey.com<br>gbridgman@susmangodfrey.com<br>nspear@susmangodfrey.com<br>hjosephs@susmangodfrey.com | **William H. Higgins**<br>**Andrew J. Tuck**<br>**Tania Rice**<br>ALSTON & BIRD, LLP<br>1201 W. Peachtree St., Suite 4900<br>Atlanta, GA 30309-3424<br>william.higgins@alston.com<br>andy.tuck@alston.com<br>tania.rice@alston.com |

**21.  What is the difference between objecting and excluding?**

Objecting is simply telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. The purpose of an objection to the Settlement is to persuade the Court not to approve the proposed Settlement. A successful objection to the Settlement may mean that the objector and other members of the Class are not bound by the Settlement. Excluding yourself from the Settlement is telling the Court that you do not want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.


## THE COURT'S FAIRNESS HEARING

**22.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing on Month x, 2023 at x:xx p.m. CT at x. At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider how much to pay and reimburse Class Counsel and any Service Award payment to Plaintiff. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.


**23.  Do I have to come to the hearing?**

No. But you or your own lawyer may attend at your expense. If you submit an objection, you do not have to come to Court to talk about it. As long as you filed and served your written objection on time to the proper addresses, the Court will consider it.


**24.  May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear." Your request must state your name, address, and telephone number, as well as the name, address, and telephone number of any person who will appear on your behalf. Your request must be filed with the Clerk of the Court and served on Class Counsel and Defendant's Counsel no later than Month x, 2023.


## IF YOU DO NOTHING

**25.  What happens if I do nothing at all?**

Those who are eligible to receive a payment from the Settlement do not need to do anything to receive payment; you will automatically receive a payment from the Settlement. Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendant about the claims being released in this Settlement before the Final Approval Date, ever again.

Questions? Call 1-844-633-0709 or visit www.coiclassaction-na.com

10

## GETTING MORE INFORMATION

| 26.  How can I get more information? |
| --- |

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement, available at www.coiclassaction-na.com. You can also call the Settlement Administrator toll-free at 1-844-633-0709, or write to:

North American Company COI Settlement Administrator
c/o JND Legal Administration
P.O. Box 11037
Seattle, WA 98111

**PLEASE DO <u>NOT</u> CONTACT THE COURT**

Questions? Call 1-844-633-0709 or visit www.coiclassaction-na.com

11

# EXHIBIT C

## Class Period By Issue State

| Issue State/Territory | Start of Class Period |
|---|---|
| Illinois, Indiana, Iowa, Kentucky, Louisiana, Rhode Island, West Virginia, and Wyoming | 10/30/2008 |
| Montana and Ohio | 10/30/2010 |
| Alabama, Arizona, Connecticut, Georgia, Hawaii, Maine, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, Washington, and Wisconsin | 10/30/2012 |
| Arkansas, Florida, Idaho, Kansas, Missouri, Nebraska, Oklahoma, and Virginia | 10/30/2013 |
| California, Pennsylvania, and Texas | 10/30/2014 |
| Alaska, Colorado, Delaware, Maryland, Mississippi, New Hampshire, North Carolina, South Carolina, and Washington, D.C. | 10/30/2015 |

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| PHT HOLDING II LLC, on behalf of itself and all others similarly situated, | ) ) ) | Civil Action No. 18-CV-00368 |
| | ) ) | Honorable Stephanie M. Rose |
| Plaintiff, | ) ) | Honorable Helen C. Adams |
| vs. | ) ) ) | |
| NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**[PROPOSED] FINAL ORDER AND JUDGMENT**

WHEREAS, Plaintiff PHT Holding II LLC, on behalf of itself and the Class, entered into a settlement (the "Settlement") with Defendant North American Company for Life and Health Insurance;

WHEREAS, Class Plaintiff PHT Holding II LLC ("Plaintiff"), on behalf of itself and the Class, entered into a settlement (the "Settlement," Dkt. ____) with Defendant North American Company for Life and Health Insurance ("North American");

WHEREAS, on _____, 2023, the Court entered its Order Preliminarily Approving Class Action Settlement (Dkt. ___) ("Preliminary Approval Order"). Among other things, the Preliminary Approval Order authorized Class Counsel to disseminate notice of the Settlement, the fairness hearing, and related matters to the Class.

WHEREAS, notice was provided to the Class pursuant to the Preliminary Approval Order (Dkts. _____), a website was established with the approved long-form notice, and a call-in line was established;

WHEREAS, [Insert number, if any] Final Class Members objected to the Settlement by the deadline provided for in the Preliminary Approval Order, and [Insert number, if any] Class Members opted out;

WHEREAS, the Court held a fairness hearing on _____, 2023, at _____;

WHEREAS, the Settlement requires, among other things that all Released Claims against Released Parties be settled and compromised;

WHEREAS, this application is uncontested by Defendant; and

WHEREAS, this Court has considered Plaintiff's Motion for Final Approval of Class Action Settlement, supporting declarations, oral argument presented at the fairness hearing, and the complete records and files in this matter.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.      The capitalized terms used herein shall have the meanings set forth in the Settlement Agreement (Dkt. _____), which is incorporated herein by reference.

2.      The Preliminary Approval Order outlined the form and manner by which Plaintiff would provide Class Members with notice of the Settlement, the fairness hearing, and related matters. Proof that Notice complied with the Preliminary Approval Order has been filed with the Court and is further detailed in the "Motion for Final Approval of Class Action Settlement." The Notice given to Class Members complied in all respects with the requirements of Rule 23 of the

Federal Rules of Civil Procedure and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

3.     The Court finds that the Attorney General of the United States and the appropriate state officials have received notice of the Settlement Agreement in accordance with the terms of the Class Action Fairness Act, 28 U.S.C. § 1715(b).

4.     The Settlement was attained following an extensive investigation of the facts. It resulted from vigorous arm's-length negotiations which were undertaken with the assistance of a mediator and in good faith by counsel with significant experience litigating class actions.

5.     The Class is the class certified by this Court on March 22, 2022 (Dkt. 148), with the exclusion of the policyholders that submitted timely and valid requests to be excluded from the Class in the Original Opt-Out Period or Second Opt-Out Period. Dkt. _____ (identifying opt-out policies), as well as policies owned by Class Counsel and their employees; North American; officers and directors of North American, or members of their immediate families; the heirs, successors or assigns of any of the foregoing; the Court and his or her immediate family.

6.     The Settlement is fully and finally approved because its terms are fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and the Court directs its consummation pursuant to its terms and conditions. In reaching this conclusion, the Court considered the four factors listed in Rule 23(e)(2) and the four factors listed in *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

7.     In reaching this conclusion, the Court considered the complexity, expense, and likely duration of the litigation, the Class's reaction to the Settlement, and the result achieved. [Insert whether any objections to the Settlement or the plan of distribution were received or timely filed.]

3

8.     North American shall fund the Settlement Escrow Account in accordance with the terms of the Settlement Agreement. The Settlement Escrow Account is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder.

9.     The distribution plan, as described in the Motion for Final Approval of Class Action Settlement and supporting documents, and previously preliminarily approved by the Court, is approved because it is fair, reasonable, and adequate.

10.     This Final Order and Judgment shall apply to and bind the Releasing Parties as defined and set forth in Section 1.50 of the Settlement Agreement.

11.     This Final Order and Judgment shall apply to the Class with the exception of the policyholders that submitted timely and valid requests to be excluded from the Class in the Original Opt-Out Period or Second Opt-Out Period. Dkt.                (identifying opt-out policies). The individuals or entities that own these opt-out policies are not included in or bound by this Final Order and Judgment, solely as it relates to the opt-out policies, and are not entitled to any recovery from the settlement proceeds obtained through this Settlement with respect to the opt-out policies. To the extent an individual or entity owns both a policy that is excluded from the Class and a policy that is included in the Class, such individual or entity shall be bound by this Final Order and Judgment in connection with any policies included in the Class. For the avoidance of doubt, such individuals or entities shall not be bound by this Final Order and Judgment to the extent it relates to policies that are excluded from, or otherwise not a part of, the Settlement.

12.     This Court has jurisdiction over the subject matter of this action and the Releasing Parties are subject to this Court's jurisdiction for purposes of implementing and enforcing the Settlement, bar order, and releases contained herein.

13.     This Final Order and Judgment shall operate as a complete and permanent bar order that discharges and releases the Released Claims by the Releasing Parties as to all the Released Parties. The Released Claims do not include the Excluded Claims.

14.     The Releasing Parties shall be deemed to have, and by operation of this Final Order and Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Parties of and from all Released Claims including Unknown Claims, which are expressly deemed waived and released by operation of this Final Order and Judgment.

15.     The institution, maintenance and prosecution by any of the Releasing Parties, either directly, individually, representatively, derivatively or in any other capacity, by whatever means, of any other action against the Released Parties in any court, or in any agency or other authority or arbitral or other forum wherever located, asserting any of the Released Claims is permanently and completely barred, enjoined, and restrained.

16.     The applicability of this Final Order and Judgment and the bar order and releases contained herein shall not be dependent on a Releasing Party's actual receipt of any settlement proceeds obtained through this Settlement.

17.     The Released Parties may file the Agreement and/or this Final Order and Judgment in any action that may be brought against them to support a defense or counterclaim involving principles of res judicata, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

18.     Within 30 calendar days after the Final Settlement Date, Class Counsel shall calculate each Class Member's distribution pursuant to the plan of allocation proposed by Class Counsel and approved by the Court (Dkt.            ) and provide an Accounting to Defendant's

counsel and the Settlement Administrator. Within 30 calendar days of Defendant's counsel's receipt of the Accounting or, in the event of a dispute, within 10 calendar days after resolution of any disputed related to the Accounting, the Settlement Administrator will notify the Parties of the Distribution Date. On the Distribution Date, the Settlement Administrator will, with respect to Final Class Members who own Terminated Policies, send for delivery by U.S. mail a settlement check in the amount of the share of the Final Class Member Settlement Benefits to which he/she/it is entitled. On the Distribution Date, North American will commence applying Accumulation Value Credits for each In-Force Policy and will make such credits effective for each In-Force Policy on the Policy Credit Date. Any further distributions will be made in accordance with Section 2.2 of the Settlement Agreement and the plan of allocation proposed by Class Counsel and approved by the Court (Dkt.              ).

19.     The Releasing Parties are permanently barred, enjoined and restrained from making any claims against the Settlement Escrow Account, and all persons, including the Settlement Administrator, Plaintiff and Class Counsel, Defendant, and its Counsel, are released and discharged from any claims arising out of the administration, management or distribution of the Settlement Escrow Account.

20.     There is no just reason for delay in directing entry of a Final Judgment and immediate entry by the Clerk of the Court is expressly directed.

21.     Settlement Administration Expenses may be paid out of the Settlement Escrow Account as they become due, subject to the terms of the Settlement.

22.     Neither the fact nor substance of the Settlement, nor any act performed or document executed pursuant to the Settlement, may be deemed or used as a presumption, inference or

admission of fault, liability, injury or wrongdoing in any civil, criminal, administrative, or other proceeding in any jurisdiction.

23.     The Action is dismissed with prejudice as to Defendant and, except as provided in the Settlement Agreement and the Court's Order Awarding Fees and Expenses (Dkt. ___), without costs to either party.

24.     Without affecting the finality of this Final Order and Judgment, the Court specifically retains continuing and exclusive jurisdiction over the enforcement of this Final Order and Judgment and bar order and the enforcement of the Settlement, including all future proceedings concerning the administration and enforcement of the Settlement Agreement.

25.     This Final Order and Judgment shall become effective immediately.

ENTERED this _____ day _____of _____.


_____
Hon. Stephanie M. Rose
UNITED STATES DISTRICT JUDGE