IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| PHT HOLDING II LLC, on behalf of itself and all others similarly situated, | ) ) ) | Case No. 4:18-cv-00368-SMR-HCA |
| Plaintiff, | ) ) | ORDER ON MOTION FOR FINAL APPROVAL OF CLASS ACTION |
| v. | ) ) | SETTLEMNT |
| NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, | ) ) ) | |
| Defendant. | ) | |

Before the Court are two Motions by Plaintiff PHT Holding II, LLC ("PHT"). The first is a Motion for Final Approval of Class Settlement. [ECF No. 314]. The second Motion is a Motion for Attorney's Fees and Costs by Class Counsel. [ECF No. 312]. For the reasons discussed below, both Motions are GRANTED.

## I.    BACKGROUND

### A.  Procedural Background

Plaintiff initiated this case alleging that Defendant North American Company for Life and Health Insurance ("North American") assessed improper cost of insurance fees ("COI fees") on certain life insurance policies ("Class Policies") issued by the company in breach of contract. After an extensive class discovery period, the case was certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on March 22, 2022. [ECF No. 148].

The parties informed the Court that they had reached a preliminary settlement days before the case was set to proceed to trial beginning on June 19, 2023. On August 25, 2023, the Court entered an order preliminarily approving the Settlement Agreement. [ECF No. 310]. Plaintiff was

directed to provide notice of the terms of the proposed to Class Members to allow them to file

objections. *Id*. A Final Approval Hearing was set to determine whether the terms and conditions

of the Settlement Agreement are "fair, reasonable, and adequate" as required by Rule 23. *See* Fed.

R. Civ. P. 23(e)(2).

The Court-approved the Settlement Notice was sent to Class Members via first-class mail

by the Settlement Administrator JND Legal Administration LLC ("JND") on October 16, 2023.

[ECF No. 314-3 ¶ 6] (Intrepido-Bowden Decl.). Plaintiff filed a Motion for Final Approval on

November 11, 2023. The Final Approval Hearing was held on November 28, 2023.

### B.   Settlement Agreement Terms

The Settlement Agreement sets for two primary components:

> 1. **CASH**: A Settlement Amount of **$59,000,000.00**, which is equal
> to approximately **36.2%** of all overcharges collected by North
> American from the Class Policies through March 31, 2023.
>
> 2. **VALIDITY STIPULATION AND STOLI WAIVER**: An
> agreement that North American will not challenge the validity and
> enforceability of any eligible policies owned by participating
> members of the Class on the grounds of lack of an insurance interest
> or as being STOLI.

[ECF No. 309-3 § 1.7].

The distribution of the settlement will be distributed to Class Members on a *pro rata* share

according to the plan of allocation set forth in the Settlement Agreement. Checks will be mailed

to Class Members whose policies have terminated at the addresses on file with North American.

Class Members who maintain in-force policies will receive payments directly to the accumulation

values of their policy accounts without the need to submit a claim. *Id*. § 2.2(c). None of the

settlement funds will revert to North American based on a failure to file a claim. *Id*. § 2.1(g).

Plaintiff and Class Members agree to release any and all claims that were or could have been asserted in this case concerning the Class Policies through the Final Approval Date. *Id.* § 1.22. The release excepts claims pertaining to COI deductions after the approval date; non-Class Policies; completion or enforcement of the Settlement Agreement; or to enforce a death benefit. *Id.* §§ 1.22, 1.48.

The Settlement Agreement contemplates that a portion of the Settlement Escrow Account may be used for fees incurred during its administration, which includes attorney's fees and reimbursement of all litigation expenses. *Id.* § 6.1. It provides for a Service Award of up to $25,000.00 to be paid from the Settlement Escrow Account to PHT, the Class Representative.

## II.    DISCUSSION

### A. *Class Certification*

The Court previously certified the class as:

> All current and formers owners of Classic Term UL I or II issued or insured by North American Company for Life & Health Insurance, or its predecessors, during the Class Period.

[ECF No. 148 at 29].

Rule 23 provides that "[i]f the court has already certified a class, the only information necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23(e)(1) ad. comm. notes (providing "[t]he ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement"). The proposed Settlement Agreement does not implicate a need to re-certify the class.

### B. Form and Manner of Notice and Opt-Outs

As noted, the Settlement Agreement was preliminarily approved by the Court on August 25, 2023. [ECF No. 310 ¶ 2] (concluding that "it will likely be able to approve the Settlement under Rule 23(e)(2)."). A second opt-out period for Class Members was also ordered. *Id*. ¶ 12. JND mailed the court-approved Settlement Notices to Class Members on September 15, 2023. [ECF No. 314-3 ¶ 6]. Follow-up notices were sent on November 8, 2023 to Class Members whose notices were returned as undeliverable. *Id*. ¶ 7.

JND also posted the Long Form Settlement Notice on a website created during the class notice period and operated a toll-free phone number for information as well. *Id*. ¶¶ 9–14. Two opt-out requests along with two objections from three policyowners were received by JND by the deadline. *Id*. ¶¶ 16–18. The objections were withdrawn after the Class Members received further clarification about the terms and benefits of the Settlement Agreement. [ECF No. 314-2 ¶¶ 45–47].

Plaintiff explains that the first objection was submitted by a married couple who each own a Class Policy. [ECF No. 314-1 at 17]. They were apparently under the impression that current policyholders would benefit from the Settlement Agreement only if they cashed out their policies before death. *Id*. Class Counsel explained that current policyholders are paid credits that are applied to their accumulation value, which provides benefits without cashing out the policy. *Id.* The two policyholders withdrew their objection soon thereafter. [ECF No. 313]. The other objection requested more information about the Settlement Agreement, including how much North American had overcharged policyholders and the settlement benefits that were provided to each policyholder. [ECF No. 314-2 ¶ 46]. Plaintiff represents that the policyholder withdrew the

objection once he was apprised of the terms of the Settlement Agreement and given an estimate of his net settlement recovery. *Id.*

### C. Approval of Settlement

#### 1. Legal Standard

The Federal Rules of Civil Procedure provides the standard under which a court may approve a class action settlement that would "bind class members." Fed. R. Civ. P. 23(e)(2). A court may only approve such a settlement "after a hearing and only on finding that it is fair, reasonable, and adequate." *Id.* A court may not substitute its "own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148–49 (8th Cir. 1999). However, when considering a class settlement, "the district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). "The court's role in reviewing a negotiated class settlement is . . . 'to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned.'" *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015) (citation omitted). Approval of a class action under Rule 23 is committed "to the sound discretion" of the district court. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

A settlement agreement in a class action "is a private contract negotiated between the parties." *In re Wireless,* 396 F.3d at 934. Federal courts have long recognized a policy in favor of settlement agreements between parties which "is particularly strong in the class action context." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993). The Eighth Circuit has held that the public policy favoring settlement agreements means "courts should approach them with a presumption in their favor." *Petrovic*, 200 F.3d at 1148 (citation omitted).

When determining whether a settlement is fair, reasonable, and adequate, a court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The United States Court of Appeals for the Eighth Circuit has set forth four factors which courts within the Circuit have traditionally applied when considering whether a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement agreement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.  *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).  The most important of the *Van Horn* factors is the merits of the plaintiff's case versus the terms of the proposed settlement.  *In re Wireless*, 396 F.3d at 933.

2.  Analysis

a.  Adequacy of representation and arm's-length negotiation

The first two factors of Rule 23(e)(2) concern the conduct of the Class Representative and Class Counsel, asking whether (1) they have adequately represented the class; and (2) the settlement proposal was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(A)–(B).

As it pertains to the Class Representative, the inquiry is two-fold: (1) whether it shares common interests with the other class members; and (2) whether it vigorously pursued the interests of the class through qualified counsel.  *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 569 (S.D. Iowa 2011).  There is an assumption of fairness when a settlement is reached after arm's-length negotiations.  *Id.* at 570 (cleaned up).

The Court previously found that the Class Representative adequately represented the class by virtue of the fact that it suffered the same improper COI overcharges, giving it the same interest in maximizing its recovery from North American for that injury.  *See Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 440 (S.D. Iowa 2001) (concluding that the class representative shared the same interests as the class members because they suffered the same injury and there were no antagonistic interests with the class).

With respect to Class Counsel, the Court finds they have discharged their duties well and have admirably represented the Class Members.  The record reflects that these attorneys have represented numerous other classes in cases alleging COI overcharges.  *See* [ECF No. 314-2 ¶¶ 3–4] (Ard Decl.).  Class Counsel details the extensive litigation history of this case, which spanned nearly five years and entailed the exchange of thousands of discovery documents and the filing of

numerous motions. The results obtained by Class Counsel were strong, as the Court discusses below. There is no question regarding their performance.[1]

The record also reflects that the Settlement Agreement was reached during an arm's-length negotiation. Negotiation and mediation efforts in this case spanned six months and included an in-person mediation session supervised by a former United States District Judge. [ECF No. 309-9 ¶¶ 6–7] (Cogman Decl.). One of the mediators submitted a declaration confirming that the parties reached a settlement during an arm's-length negotiation which was conducted "carefully, deliberately, and in good faith to advance the best interests of their clients." *Id.* ¶ 10. The Court does not find anything which leads it to believe that the Class Representative was anything other than adequate and Class Counsel discharged its duties well.

b. Adequacy of relief provided to the class

i. Costs, risks, and delay of trial and appeal

The Court must next consider the relief provided in the Settlement Agreement against "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). The analysis is reflected in two of the factors described in the Eighth Circuit's balancing test: "the merits of the plaintiff's case, weighed against the terms of the settlement" and "the complexity and expense of further litigation." *Van Horn*, 840 F.2d at 607.

The Eighth Circuit has recognized that class actions "place an enormous burden of costs and expenses" upon the judiciary and the parties. *Marshall*, 787 F.3d at 512. This case was especially complex because it entailed the alleged breach of insurance contracts which implicated

---

[1] Counsel for both parties ably discharged their professional duties. This case was hard fought and extensively litigated. Despite the extensive record and voluminous briefing generated throughout the five years of litigation, counsel maintained a strong command of the record and presented strong subject-matter knowledge in the law which was presented in a clear manner, even if it did not lend itself to brevity.

the necessity to interpret technical actuarial terms and concepts.  This would have required the Court and the jury to consider conflicting expert testimony about the proper standards and practices of an actuary in conjunction with appropriate life insurance pricing assumptions, the proper methodology for ascertaining COI rates, and issues pertaining to mortality expectations.  This case would have been a "battle of the experts" where it would not be clear how a jury would resolve such issues.  *Fleischer v. Phoenix Life Ins. Co.*, Civil Action No. 11-cv-8405(CM), 2015 WL 10847814, at *9 (S.D. N.Y. Sept. 9, 2015).  This fact would substantially raise the by risk of proceeding to trial and appeal rather than settlement.

This litigation risk extended to both liability and damages.  North American contested nearly all of Plaintiff's claim which would have required prevailing on many critical issues just to establish liability for a breach of contract.  Questions regarding the existence of any breach remained for the consideration of the jury where it would have had to undertake an assessment of the factors considered by North American when setting COI rates, the insurer's pricing assumptions during product design, and when the company had a duty to revise its COI rates, if such duty was required under the Class Policies.  [ECF No. 294 at 10, 19–23].

Additionally, Plaintiff faced obstacles to obtain damages comparable to the amount in the Settlement Agreement.  In its Motion for Approval, Plaintiff explains that its damages could have been reduced to as low as $367,668.00 if North American had only prevailed on its position regarding expected FMI during the original pricing.  [ECF No. 314-1 at 4].  Even if the jury were to adopt its position regarding the FMI, Plaintiff maintains the jury could have reasonably concluded that its proposed redetermination methodology was overly complex and applied the "multiplicative approach" of North American's expert.  *Id.* at 17.  Plaintiff argues that this is not a fanciful scenario, pointing out that a recent COI class action in the United States District Court for

the Western District of Missouri resulted in the class recovering less than $1 million in damages after it had sought $18 million. *Id.* at 16 (citing *Meek v. Kansas City Life Ins. Co.*, Case No. 19-00472-CV-W-BP, 2023 WL 7182127 (W.D. Mo. Sept. 27, 2023).

The total potential damages for a class recovery were also subject to North American's remaining affirmative defenses, which the Court had found were fact issues for the jury. [ECF No. 294 at 29] (holding "[w]hether PHT and its predecessors were unreasonable in failing ot bring its claim sooner is a disputed fact. The same goes for whether they had knowledge or notice of the insurer's failure to adjust the COI rates.").

Should Plaintiff have succeeded at trial on all issues of liability and damages, the judgment would have still needed to stand on appeal. Appealable issues included the Court's rulings on class certification and summary judgment, in addition to the jury verdict. Although the Court is confident that its rulings would have withstood appellate scrutiny, distribution to Class Members would have been delayed for years regardless.

In light of all the pitfalls of proceeding to trial, Plaintiff maintains that its "recovery here is an exceptional result." [ECF No. 314-1 at 17]. The Settlement Agreement amounts to 36.2% of the COI overcharges through March 31, 2023 under the damages model offered by Plaintiff. If the damages model crafted by North American's experts were applied, the Settlement Agreement is over 107% of the total possible damages. The recovery provided for in the Settlement Agreement is 160 times the damages a jury would have awarded if North American had succeeded on the FMI argument. *See* [ECF No. 314-2 ¶ 26].

The Court agrees that the Settlement Agreement is more than adequate here. The result of any trial in this case was highly uncertain. The Court is well-aware of the complexity of the subject-matter involved in this case. Juries take their duties very seriously and earnestly but a

panel of nine individuals would have had extraordinary difficulty wrestling with the issues here. Not only was the intricacies of actuarial science front and center in this case, so was the contract law of multiple states. Such a combination would have been a demanding task for a jury, making the result of a verdict highly uncertain. Therefore, the Court has no trouble finding the Settlement Agreement amount to be sufficient. Courts regularly approve settlements with awards lower than the estimated maximum damages here. *See Beaver Cnty. Emps' Ret. Fund v. Tile Shop Holding, Inc.*, Case No. 0:14-cv-00786-ADM-TNL, 2017 WL 2574005 (D. Minn. June 14, 2017) (noting that "the median recovery of estimated damages" in securities class actions approximate between 6.8% to 9.5%).

Plaintiff emphasizes that the other provisions of the Settlement Agreement are not unduly restrictive of the rights of Class Members. It contends that the scope of release for other claims contained in the Settlement Agreement is "narrowly tailored." [ECF No. 314-1 at 19]. The release pertains only to historical conduct, which permits claims for improper COI charges if they are alleged to have been imposed after the Final Approval Date.

The Settlement Agreement also contains a validity guarantee to ensure that policyowners receive their policy benefits at maturity while preventing North American from undermining the value of the Settlement Agreement by challenging the validity of the Class Policies on STOLI grounds.[2] *Id.* at 10. Plaintiff submitted an expert declaration assessing the non-monetary value of the policy validity guarantee at $2.3 million. [ECF No. 314-2 at 61] (Rouse Report). The Court is confident that this Settlement Agreement is an adequate result for the Class.

---

[2] STOLI means "stranger-owned life insurance." The lack of an insurable interest is widely recognized by courts as a basis to challenge the validity of an insurance policy.

ii.    Proposed method of distributing relief

The Court must next consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). To satisfy this factor, a proposed settlement must include "detailed procedures for processing Settlement Class Members' claims and distributing the proceeds of the Settlement to eligible claimants." *In re Resideo Techs., Inc., Secs. Litig.*, Case No. 19-cv-2863 (WMW/BRT), 2022 WL 872909, at *3 (D. Minn. Mar. 24, 2022).

Given the nature of the dispute, distribution of the payments is not complicated and does not require action on the part of Class Members. [ECF No. 309-1 ¶ 32]. The method of distribution entails crediting the accumulation value for in-force policies and sending checks to Class Members whose policies are terminated. [ECF No. 314-2 ¶ 30]. The Court concludes that the proposed method of distribution is fair, adequate, and reasonable.

iii.    Attorney's fees

The Federal Rules of Civil Procedure obligate the Court to evaluate "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii); *see also* Fed. R. Civ. P. 23(h) (providing that "the court may award a reasonable attorney's fee" in certified class actions). The determination of an attorney's fee is within the discretion of the district court. *Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1094 (8th Cir. 2012) (cleaned up) (citation omitted).

Class Counsel has submitted a separate Motion for Attorney's Fees and Costs seeking an award of attorney's fees not to exceed $33^{1/3}$% of the value of all benefits provided under the Settlement Agreement. [ECF No. 312]. Class Counsel argues that the requested fee award is supported by the excellent results achieved in this case, the degree of skill needed to achieve such

results, and the fact that the percentage requested is near the low end of the range of fee awards approved within the Eighth Circuit. The Court has addressed the first two reasons offered in support of the award and it agrees that Class Counsel has achieved a good result for the class and exhibited a high degree of skill in doing so. The Court agrees that the request for an award of one-third the common fund is also reasonable.

Drawing an attorney's fee from the common fund has been long approved by the United States Supreme Court. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (holding that when an attorney obtains recovery "for the benefit of persons other than himself or his client [the attorney] is entitled to a reasonable attorney's fee form the fund as a whole").

a) Percentage Method

Courts within the Eighth Circuit traditionally award attorney's fees using the percentage-of-the-benefit method drawn from the common fund. *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019); *see also Petrovic*, 200 F.3d at 1157 (holding "[i]t is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common-fund settlement."). This is often "preferable" to the lodestar method when determining the reasonableness of fees in cases where the fees and the class benefits are derived from a single fund. *Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-cv-4321NKL, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) (citation omitted). A salutary benefit of the percentage method is that it aligns the interests of counsel and the class members by providing an incentive to maximize the class's recovery. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245 (8th Cir. 1996).

Class Counsel seeks a fee award of 33[1/3]% of the $59 million amount in the Settlement Agreement.[3] They point the Court to numerous cases within the Eighth Circuit where courts have

---

[3] This equates to the unsightly, but handsomely rewarding figure of $19,666,666.67.

approved attorney's fee awards in the same ballpark. *See, e.g., Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865 (8th Cir. 2017) (affirming award of one-third of $60 million settlement fund); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (36% fee award); *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016) (finding an award of 33$^{1/3}$% to be "in line with other awards in the Eighth Circuit"); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061–62 (D. Minn. 2010) (33$^{1/3}$% award).

  b) Lodestar "cross-check"

Courts will occasionally "cross-check" a percentage award with the lodestar method to confirm the reasonableness of a fee request. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). This is not required when evaluating a fee request. *In re CenturyLink Sales Pracs. & Sec. Litig.*, MDL No. 17-2795 (MJD/KMM), 2020 WL 7133805, at *13 (D. Minn. Dec. 4, 2020). When cross-checking a fee request, it is not necessary for a court to use "mathematical precision" or "bean counting." *In re Pork Antitrust Litig.*, Civil No. 18-1776 (JRT/JFD), 2022 WL 4238416, at *9 (D. Minn. Sept. 14, 2022) (cleaned up).

The lodestar method is a calculation of attorney's fees by multiplying the number of hours by an hourly rate. *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 855 (8th Cir. 2021) (cleaned up). It is sometimes utilized on the issue of attorney's fees in civil rights litigation in order to "roughly approximate[] the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). Once the lodestar method is calculated, the total is compared with a "multiplier" which provides context for the magnitude of the fee under the percentage method as compared with an attorney billing at an hourly rate. It is well-established that the multiplier does not need to "fall within any pre-defined range" but serves to supplement

the reasonableness analysis. *Yarrington*, 697 F. Supp. 2d at 1065. An important consideration in determining the reasonableness under the percentage method is the contingent nature of the litigation and the quality of the work by counsel. *Anderson v. Travelex Ins. Servs.*, *Inc.*, 8:18-CV-362, 2021 WL 4307093, at *4 (D. Neb. Sept. 22, 2021) (citation omitted). The Eighth Circuit has found a multiplier as high as 5.3 to be reasonable. *See Rawa*, 934 F.3d at 870.

Class Counsel has appended exhibits documenting that 8,856.40 hours in total were expended in this case. [ECF No. 314-2 ¶ 34] (Ard Decl.). Counsel avers that this totals to a lodestar amount of $7,248,950.00 using their regular hourly rates. [ECF No. 312-1 at 21]. Expenses in the amount of $1,785,634.28 were advanced by Class Counsel as well. [ECF No. 312-2 ¶¶ 24–25, 30]. This results in a lodestar multiplier of 2.61, which Class Counsel urges is far below the boundary of reasonableness. *Id.* ¶ 29.

According to Class Counsel, the hourly rates are reasonable and "lower than peer firms litigating matters of similar magnitude." [ECF No. 312-1 at 22]. Those rates should apply because this case required "particular legal specialization" which allows the Court to consider a national billing rate. *ResCap Liquidating Tr. v. Primary Residential Mortg., Inc.*, Case No. 0:16-cv-4070 (SRN/HB), 2021 WL 1668013, at *12 (D. Minn. Apr. 28, 2021) (citing *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1992)). Class Counsel contends that the partners in its law firm, Susman Godfrey, would be compensated in an amount equivalent to around $800 per hour for their work in this case. [ECF No. 312-2 ¶ 28]. This amount is sharply lower than the median standard billing rate for equity partners of $1,463 per hour, as reflected by a nationwide survey of top 50 law firms nationwide. *Id.* ¶ 27. Accordingly, Class Counsel urges the Court to find its fee request reasonable, as have other district courts around the country. [ECF No. 312-1 at 22] (citing *Phoenix Life*, 2015 WL 10847814, at *18).

Local Counsel spent 778.8 hours on the case, representing a lodestar amount of $271,100.00. [ECF No. 312-3 ¶ 8]. This equals out to around $350 per hour rate by local counsel. *Id*. ¶ 9. Local counsel advanced expenses in the amount of $1,094.05. *Id*. ¶ 12.

The Court concludes that the fee request by Class Counsel and Local Counsel is reasonable when cross-checked with the lodestar method. The hourly rate of $800 per hour is in-line with the rates of major law firms throughout the country and courts have approved similar rates.

### c)  *Johnson* factors

When evaluating the reasonableness of an attorney's fee request, courts within the Eighth Circuit use the factors identified by the United States Court of Appeals for the Fifth Circuit for guidance. *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018) (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719–20 (5th Cir. 1974)).

Those factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

*Zoll v. E. Allamakee Cmty. Sch. Dist.*, 588 F.2d 246, 252 n. 11 (8th Cir. 1978) (citing *Johnson*, 488 F.2d at 717–19). Not every *Johnson* factor will be relevant to a given case; thus "the court has wide discretion as to which factors to apply and the relative weight to assign to each." *In re Xcel Energy, Inc., Secs., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 993 (D. Minn. 2005).

The Court will discuss a few of the *Johnson* factors, all of which support the attorney's fee request. The most relevant factor in this case pertains to the novelty and difficulty of the issues.

16

As the Court has already discussed, this case entailed several complicated questions and defenses by North American which required competent lawyering. Plaintiff represents that this was the "first-ever case challenging COI overcharges by North American." [ECF No. 312-1 at 23]. Additionally, the claims presented novel and difficult factual and legal issues including the calculation of damages and assertion of affirmative defenses by North American. These issues were all aggressively litigated by North American which required detailed responses from Plaintiff. The Court does not need to belabor the complexity of this case, as it is reflected in the earlier discussion in this Order and throughout the docket.

Another relevant *Johnson* factor here is the contingency nature of the legal work in this case. It is unsurprising that courts regularly find that "the risk of receiving little or no recovery is a major factor in awarding attorney fees." *In re Xcel*, 364 F. Supp. 2d at 994. This risk of uncertain recovery typically warrants "a commensurate award" for success to incentivize attorneys to pursue cases that cannot be reasonably undertaken without significant compensation for success. *Tussey v. ABB, Inc.*, Case No.: 06-CV-04305-NKL, 2019 WL 3859763, at *3 (W.D. Mo. Aug. 16, 2019).

Here, Class Counsel undertook the litigation on a fully contingent basis which consisted of over 10,000 hours of attorney time and investment of over $1.8 million in expenses. Class Counsel represents that it regularly represents clients in non-class action commercial cases on a contingency basis where its clients—typically sophisticated business entities and other institutions—agree to a contingency fee arrangement with a minimum of 40% of the gross sum recovered. [ECF No. 312-2 ¶ 23]. The Court agrees that Class Counsel undertook a significant risk in bringing and litigating this case and does not believe that the requested fee award is disproportionate.

Lastly, the Court will briefly reiterate the "results obtained" factor, which is included in the *Johnson* test. The Supreme Court has long found that the "most critical factor" when

considering a fee award is "the degree of success obtained" by counsel. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). As the Court has already discussed, the success obtained by Class Counsel here was significant and that further supports its fee request.

### d) Costs and Expenses

Class Counsel requests that, in addition to an award for its legal work, it be reimbursed for the expenses that it incurred in litigating this case. [ECF No. 312-1 at 28]. The total expenses sought are $1,700,000.[4] [ECF No. 312-2 ¶ 31]. Expenses which are reasonably and necessarily incurred in prosecuting a case should be "reimbursed proportionately by those class members who benefit by the settlement." *Yarrington*, 697 F. Supp. 2d at 1067.

Class Counsel argues that the expenses were reasonable and necessary and resulted in a direct benefit to the class. The largest line items of the expenses are expert fees along with class notice and administration. Given the extent and duration of the litigation in this case, the Court has no reason to find that the expenses were not reasonable and necessary.

### iv.     Collateral agreements

Finally, under Rule 23(e)(2)(C), the Court must also consider the Settlement Agreement against the terms of any side agreements the parties have made in connection with it. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). The parties have confirmed there are no such agreements. [ECF No. 314-1 at 25].

---

[4] Class Counsel writes that it incurred expenses of $1,786,728.33 during the case including between $138,253.27 and $153,253.27 in settlement administration expenses but notes that the Settlement Agreement provides the expenses reimbursement will not exceed $1.7 million. [ECF No. 309-3 § 6.1].

c. Equitable treatment of class members

Rule 23 also requires the Court consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The equitable treatment provision does not mean that all Class Members be treated *equally*, rather, it means that "the district court must take into account the interest of the entire class." *Marshall*, 787 F.3d at 519. This is a part of evaluating the Settlement Agreement based on the strength of the case and potential value, accounting for "the claims of those with potentially substantial damages to those with potentially minimal or insignificant damages." *Id*. at 519–20.

The Settlement Agreement will distribute proceeds on a *pro rata* basis using each class member's share of the total claimed damages. [ECF No. 314-1 at 25]. Courts have regularly approved settlement allocation on a *pro rata* basis. *Carroll v. Flexsteel Indus., Inc.*, 21-CV-1005-CJW-MAR, 2022 WL 4002313, at *3 (N.D. Iowa Sept. 1, 2022); *Phoenix Life*, 2015 WL 10847814, at *12 (finding distribution on a *pro rata* basis to be "fair, adequate, and reasonable").

d. Remaining *Van Horn* factors

In addition to the express requirements of Rule 23 discussed above, the Eighth Circuit has identified additional considerations when evaluating a class settlement. *See Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 860–61 (S.D. Iowa 2020) (noting that the Rule 23(e)(2) factors are additive to the class action settlement inquiry and are not "intended to displace the various factors that courts have developed in assessing the fairness of a settlement"). Both of these factors can be quickly assessed in this case. The first is the defendant's financial condition. *Van Horn*, 840 F.2d at 607. There is nothing in the record that indicates that North American is financially incapable of satisfying its obligations under this Settlement Agreement, which the parties have confirmed. *See Marshall*, 787 F.3d 512 (finding the factor neutral when the defendant

is "in good financial standing, which would permit it to adequately pay for its settlement obligations or continue with a spirited defense in the litigation").

The second consideration under *Van Horn* is the amount of opposition to the Settlement Agreement from Class Members. As noted above, there was only three objections filed by the deadline. [ECF No. 311]. All three Class Member have since withdrawn their objections. Additionally, no Class Members appeared at the Final Approval Hearing to object to the Settlement Agreement. In light of the non-existent opposition to the Settlement Agreement from the 18,583 class members, the Court finds that this factor weighs heavily in favor of approval.

### D. Service Awards to Class Representatives

The final issue on the Motion for Final Approval is the request by Class Counsel for a service award to the class representative in the amount of $25,000. [ECF No. 312-1 at 28]. "Courts routinely recognize and approve incentive awards for class representatives and deponents." *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (collecting cases). The relevant considerations for such an award include: (1) actions the Class Representative took to protect the class's interest, (2) the degree to which the class benefited from the actions of the Class Representative, and (3) the amount of time and effort expended by the Class Representative in pursuing the litigation. *Caligiuri*, 855 F.3d at 867.

The Class Representative at this juncture in the case is PHT. PHT's predecessor in interest was Advance Trust Life & Escrow Services ("Advance Trust"), which filed this case and undertook many of the Class Representative duties early in the litigation. This included collecting and producing documents in discovery and making a corporate representative available for deposition. PHT succeeded Advance Trust prior to settlement and, according to Class Counsel, "engaged in significant efforts, on short turnaround, to facilitate a favorable resolution of this

matter for the Class, including collecting additional documents, sitting for an additional 30(b)(6) deposition, and preparing for examination at trial." [ECF No. 312-1 at 29].

The requested service award for PHT is lower than those awarded in other class actions. *Kruger v. Lely N. Am., Inc.*, Case No. 0:20-cv-00629-KMM/DTS, 2023 WL 5665215, at *6 (D. Minn. Sept. 1, 2023) ($50,000); *Terry Bishop, DVM v. Delaval Inc*., Case No. 5:19-cv-06129-SRB, 2022 WL 18542465, at *3 (W.D. Mo. June 7, 2022) ($50,000 to specific class representatives); *Alaska Elec. Pension Fund v. Bank of America Corp.*, 14-CV-7126 (JMF), 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (awarding $100,000 to two class representatives and $50,000 to six other class representatives). The Court will approve the request for a service award to PHT.

### III.    CONCLUSION

For the foregoing reasons, the Motion for Final Approval of the Class Action Settlement is GRANTED. [ECF No. 314]. The Motion for Attorney's Fees, Award of Litigation Expenses, and Service Award is also GRANTED. [ECF No. 312].

IT IS ORDERED, ADJUDGED, AND DECREED:

1. The capitalized terms used herein shall have the meanings set forth in the Settlement Agreement, [ECF No. 309-3], which is incorporated herein by reference.

2. The Preliminary Approval Order outlined the form and manner by which Plaintiff would provide Class Members with notice of the Settlement, the fairness hearing, and related matters. Proof that the Notice complied with the Preliminary Approval Order has been filed with the Court and is further detailed in the "Motion for Final Approval of Class Action Settlement." The Notice given to Class Members complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

3. The Court finds that the Attorney General of the United States and the appropriate state officials have received notice of the Settlement Agreement in accordance with the terms of the Class Action Fairness Act. *See* 28 U.S.C. § 1715(b).

4. The Settlement was attained following an extensive investigation of the facts. It resulted from vigorous arm's-length negotiations which were undertaken with the assistance of a mediator and in good faith by counsel with significant experience litigating class actions.

5. The Class is the class certified by this Court on March 22, 2022, [ECF No. 148], with the exclusion of the policyholders that submitted timely and valid requests to be excluded from the Class in the Original Opt-Out Period or Second Opt-Out Period. [ECF No. 314-3 ¶ 16] (Intrepido-Bowden Decl.) (identifying, by policy number, the nine (9) opt-out policies), as well as policies owned by Class Counsel and its employees; North American; officers and directors of North American, or members of their immediate families; the heirs, successors or assigns of any of the foregoing; the Court and his or her immediate family.

6. The Settlement is fully and finally approved because its terms are fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and the Court directs its consummation pursuant to its terms and conditions. In reaching this conclusion, the Court considered the four factors listed in Rule 23(e)(2) and the four factors listed in *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

7. In reaching this conclusion, the Court considered the complexity, expense, and likely duration of the litigation, the Class's reaction to the Settlement, and the result achieved. Only three (3) Final Class Members submitted objections to the Settlement and all three withdrew their objections. *See* [ECF No. 314-2 ¶ 45] (Ard Decl.). Only two (2) Class Members opted out. *See* [ECF No. 314-3 ¶ 16] (Intrepido-Bowden Decl.).

8. North American shall fund the Settlement Escrow Account in accordance with the terms of the Settlement Agreement. The Settlement Escrow Account is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder.

9. The distribution plan, as described in the Motion for Final Approval of Class Action Settlement and supporting documents, and previously preliminarily approved by the Court, is approved because it is fair, reasonable, and adequate.

10. This Final Order and Judgment shall apply to and bind the Releasing Parties as defined and set forth in Section 1.50 of the Settlement Agreement.

11. This Final Order and Judgment shall apply to the Class with the exception of the policyholders that submitted timely and valid requests to be excluded from the Class during the Original Opt-Out Period or Second Opt-Out Period. [ECF No. 314-3 ¶ 16] (Intrepido-Bowden Decl.) (identifying, by policy number, the nine (9) opt-out policies). The individuals or entities that own these opt-out policies are not included in or bound by this Final Order and Judgment, solely as it relates to the opt-out policies, and are not entitled to any recovery from the settlement proceeds obtained through this Settlement with respect to the opt-out policies. To the extent an individual or entity owns both a policy that is excluded from the Class and a policy that is included in the Class, such individual or entity shall be bound by this Final Order and Judgment in connection with any policies included in the Class. For the avoidance of doubt, such individuals

or entities shall not be bound by this Final Order and Judgment to the extent it relates to policies that are excluded from, or otherwise not a part of, the Settlement.

12.  The Court has jurisdiction over the subject matter of this action and the Releasing Parties are subject to this Court's jurisdiction for purposes of implementing and enforcing the Settlement, bar order, and releases contained herein.

13.  This Final Order and Judgment shall operate as a complete and permanent bar order that discharges and releases the Released Claims by the Releasing Parties as to all the Released Parties.  The Released Claims do not include the Excluded Claims.

14.  The Releasing Parties shall be deemed to have, and by operation of this Final Order and Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Parties of and from all Released Claims including Unknown Claims, which are expressly deemed waived and released by operation of this Final Order and Judgment.

15.  The institution, maintenance, and prosecution by any of the Releasing Parties, either directly, individually, representatively, derivatively or in any other capacity, by whatever means, of any other action against the Released Parties in any court, or in any agency or other authority or arbitral or other forum wherever located, asserting any of the Released Claims is permanently and completely barred, enjoined, and restrained.

16.  The applicability of this Final Order and Judgment and the bar order and releases contained herein shall not be dependent on a Releasing Party's actual receipt of any settlement proceeds obtained through this Settlement.

17.  The Released Parties may file the Agreement and/or this Final Order and Judgment in any action that may be brought against them to support a defense or counterclaim involving principles of res judicata, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

18.  Within 30 calendar days after the Final Settlement Date, Class Counsel shall calculate each Class Member's distribution pursuant to the plan of allocation proposed by Class Counsel and approved by the Court, [ECF No. 309-8], and provide an Accounting to North American's counsel and the Settlement Administrator.  Within 30 calendar days of North American's counsel's receipt of the Accounting or, in the event of a dispute, within 10 calendar days after resolution of any dispute related to the Accounting, the Settlement Administrator will notify the Parties of the Distribution Date.  On the Distribution Date, the Settlement Administrator will, with respect to Final Class Members who own Terminated Policies, send for delivery by U.S. mail a settlement check in the amount of the share of the Final Class Member Settlement Benefits to which he/she/it is entitled.  On the Distribution Date, North American will commence applying Accumulation Value Credits for each In-Force Policy and will make such credits effective for each In-Force Policy on the Policy Credit Date.  Any further distributions will be made in accordance with Section 2.2 of the Settlement Agreement and the plan of allocation proposed by Class Counsel and approved by the Court.  [ECF Nos. 309-3, 309-8].

19. The Releasing Parties are permanently barred, enjoined, and restrained from making any claims against the Settlement Escrow Account, and all persons, including the Settlement Administrator, Plaintiff and Class Counsel, North American, and its Counsel, are released and discharged from any claims arising out of the administration, management, or distribution of the Settlement Escrow Account.

20. There is no just reason for delay in directing entry of a Final Judgment and immediate entry by the Clerk of the Court is expressly directed.

21. Settlement Administration Expenses may be paid out of the Settlement Escrow Account as they become due, subject to the terms of the Settlement.

22. Neither the fact nor substance of the Settlement, nor any act performed or document executed pursuant to the Settlement, may be deemed or used as a presumption, inference or admission of fault, liability, injury or wrongdoing in any civil, criminal, administrative, or other proceeding in any jurisdiction.

23. The Action is dismissed with prejudice as to Defendant and, except as provided in the Settlement Agreement and the Court's Order Awarding Fees and Expenses without costs to either party.

24. Without affecting the finality of this Final Order and Judgment, the Court specifically retains continuing and exclusive jurisdiction over the enforcement of this Final Order and Judgment and bar order and the enforcement of the Settlement, including all future proceedings concerning the administration and enforcement of the Settlement Agreement.

25. This Final Order and Judgment shall become effective immediately.

IT IS SO ORDERED.

Dated this 30th day of November, 2023.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT